Commonwealth *v.* DeMars.

COMMONWEALTH *vs.* WARREN DEMARS.

No. 95-P-928.

Hampden. May 6, 1996. - June 3, 1997.

Present: BROWN, PERRETTA, & FLANNERY, JJ.

Further appellate review granted, 425 Mass. 1107 (1997).

*Practice, Criminal,* Conduct of prosecutor.

At the trial of indictments for rape, assault and battery, and violation of G. L. c. 272, § 29A, in which credibility was the main issue, repeated instances of prosecutorial misconduct in violation of Supreme Judicial Court Rule 3:07, Canon 7, DR 7-106 (C)(1)&(2), including argument of a fact not in evidence, re-offering evidence already admitted along with evidence previously excluded, improperly asking the defendant on cross-examination to comment on the credibility of a police witness, taunting the defendant on cross-examination, asking questions of the defendant for which there was no factual basis, and insinuating that the defendant had a propensity to commit such crimes, created a substantial risk of a miscarriage of justice warranting reversal of the defendant's convictions. [790-794] BROWN, J., concurring.

INDICTMENTS found and returned in the Superior Court Department on September 18, 1992.

The cases were tried before *Judd J. Carhart,* J.

*Jane Larmon White,* Committee for Public Counsel Services, for the defendant.

*Lori K. Odierna,* Assistant District Attorney, for the Commonwealth.

FLANNERY, J. Do multiple instances of prosecutorial misconduct add up to a substantial risk of a miscarriage of justice? We think in the circumstances of this case they do, and, therefore, we reverse the defendant's convictions.[1]

A Superior Court jury convicted the defendant of thrice raping the complainant when she was fifteen years old (G. L. c. 265, § 23), of twice posing and photographing her in the

[1]Appellate counsel for the Commonwealth was not trial counsel.

nude (G. L. c. 272, § 29A), and of assault and battery upon her, a lesser included offense of assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A(*b*)), the crime charged. The jury found the defendant not guilty of another rape charge and two counts of indecent assault and battery. The defendant admitted that he photographed the complainant, but he claimed to have reasonably believed she was eighteen. He denied the rapes and the assault and battery.

The Commonwealth's evidence, which consisted principally of the testimony of the complainant, may be summarized as follows. When the complainant was fifteen, she and the defendant who was in his early sixties at the time, met at a Shriners' Circus where she portrayed "Little No No," an anti-drug character, and he was a security guard. He told her that he was a photographer, that she could make money ("in the hundred thousand dollars") "for just having one picture done," and that "[students] could go to school for free just for doing it once." That was enticing because her parents could not afford the tuition at Mt. Holyoke, so she gave him her name and telephone number on a piece of paper. He called her soon thereafter, picked her up in his truck, drove around while they talked, and dropped her off.

He called again during the following weeks, and they met three more times. On the first occasion, they went to a wooded area where he took pictures of her with an old movie camera, and he performed oral sex on her. Next, they went to a motel where he took black and white instant photos of her in the nude, and he raped her, or tried to rape her, vaginally and rectally using a simulated penis (dildo). Finally, they went to his residence. There, he shaved her pubic hair with an electric razor, took color instant photos of her, raped her vaginally and rectally using "a chemistry tube, like a vial," struck her repeatedly on her buttocks, and forced her to fellate him.

The defendant's version of their encounters differed from the complainant's in many particulars, and he specifically denied the rapes and the alleged battery. He also testified that he is congenitally partially crippled, that to get about he uses a cane and a wheelchair, and that he is physically incapable of most of the actions attributed to him. He agreed in large part with the complainant's description of the picture taking, but she gave him to understand she was eighteen and he had no reason to know otherwise. Some weeks before he was ar-

rested, they had a final telephone conversation which she ended by saying: "No. I never got anything from you or anything else like that. And I want $3,500. And if you don't give it to me, your ass is on the line."

The defendant's contention on appeal is that the trial was a credibility contest, and the prosecution prevailed by using impermissible tactics that were unfair and harmful. The Commonwealth agrees that credibility was pivotal[2] and that the prosecutor committed a number of improprieties. It concludes, however, that the "cumulative effect of the prosecutor's errors did not create a substantial risk of a miscarriage of justice because the errors did not rise to the level of severity or deliberateness present in cases in which the courts have determined that a defendant's conviction must be reversed." We consider the asserted prosecutorial missteps.

During her summation the prosecutor told the jury:

> "Should he have known she was under the age of eighteen? You saw her. You watched her. How old does she look like to you? *At that time, she had braces on her teeth.* She's two years older now."

(Emphasis added.) That possibly telling fact must have surprised everyone, as there was no evidence of it in the record.[3] The defendant objected, and the judge agreed to deal with it in his charge, which he did as follows: "And if you heard arguments about facts that were not in evidence, you are to disregard that. And as I told you before, to decide the case only on the evidence that comes from testimony and the exhibits."

The Commonwealth agrees that the prosecutor's unsupported assertion was "improper," but it argues that the mis-

---

[2]In her summation, the prosecutor said, "It's a simple case, weighing the credibility."

[3]During cross-examination of the defendant the prosecutor asked:

Q. "When you first met Christine, did you notice she had braces on?"

A. "Braces on where?"

Q. "Her teeth."

A. "No."

Q. "Never noticed that?"

A. "No."

There was no other reference during the trial to that matter.

statement was insignificant because it was made "only once" and was cured by the judge's final instructions. Of course, matters would be worse if the prosecutor had repeated the false tidbit. But that is no assurance that it was harmless. As for the judge's instructions, whether a jury would relate such a bland, nonspecific admonition to a misstatement of the evidence is questionable. In any event, the harm risked by such a fabrication, if it is capable of being cured, requires a directive by the judge more pointed, forceful, and timely than the one given here. See *Commonwealth* v. *Shelley,* 374 Mass. 466, 471 (1978); cf. *Commonwealth* v. *Charles,* 397 Mass. 1, 12 (1986).

The complainant testified that the defendant raped her, or tried to rape her, using a dildo. At trial, a dildo identified by the complainant was received in evidence without objection. The prosecutor then offered three other dildos that had been seized by the police in a search of the defendant's residence. Following a sidebar conference, in which the defendant's objection to those items was sustained, the prosecutor, in sight and hearing of the jury, re-offered the dildo that was already exhibit 21 and offered the other three dildos that had been excluded at sidebar. The judge repeated his ruling and instructed the jury not to consider them.

Such prosecutorial tactics, regardless of whether they are knowingly unfair or merely clumsy, are improper. The Commonwealth argues that the open-court offer in evidence of the dildos after they had been excluded at sidebar was inadvertent and did not create a substantial risk of a miscarriage of justice. The offer standing alone did not create such a risk, but it did not stand alone; it was part of a pattern of misconduct. See, e.g., *Commonwealth* v. *Smith,* 387 Mass. 900 (1983).

The prosecutor's cross-examination of the defendant was improper in several particulars. The complainant testified that the defendant shaved her with an electric razor. The Commonwealth did not offer a razor in evidence and none was mentioned in the return on the search warrant or in any police report. A police witness testified, for the first time on cross-examination, that he observed a Norelco electric shaver in the defendant's bathroom, but that he did not seize it because he "had forgotten to put that in the warrant." The defendant testified that he did not use or own an electric

razor. On cross-examination he was asked: "You're saying that the police officer is lying when he said he found the razor in your bathroom?"[4]

Asking one witness to comment on another's credibility is improper, *Commonwealth* v. *Johnson*, 412 Mass. 318, 327-328 (1992), but the impropriety may be, as the Commonwealth argues here, of no consequence. *Commonwealth* v. *Kines*, 37 Mass. App. Ct. 540, 542-543 (1994). However, in a case where credibility is the central issue, a question that invites a witness to accuse the police of lying is necessarily significant, even if it is not enough standing alone to require reversal. *Ibid.* Again, however, this question was not an isolated error. The witness may avoid the trap, as he did here, but that does not erase the question's implication or its impropriety.

Almost immediately after the foregoing exchange came the following sequence:

Q. "Are you getting upset, Mr. Demars?"

A. "I am getting extremely mad at you."

Q. "You are?"

A. "Oh, yes."

Q. "Is that the way you used to get mad at Christine when she wouldn't do what you wanted her to do?"

A. "(No answer.)"

Q. "You were just being a nice guy?"

The prosecution maintains that there was a sufficient basis in the other evidence for that question. We think not, and without a good faith basis the question is not a proper one. *Commonwealth* v. *Syrafos*, 38 Mass. App. Ct. 211, 219 (1995). It is more offensive that the exchange was not bona fide interrogation. The government should not stoop to taunting witnesses.

It did not end there, unfortunately. At another point during cross-examination the defendant was asked:

---

[4]The witness's answer reflects the sort of confusion that makes such a question improper: "Yes, ma'am. No. I'm not say [*sic*] he's lying. I'll just say, he didn't find one in my bathroom."

Q. "How was it you knew she had to be 18 to pose for nude photographs?"

A. "I took it for granted she had to be of age."

Q. "And are you in the habit of taking pictures of other 18 year olds?"

A. "I never took pictures of others."

Once again, the Commonwealth minimizes the matter, pointing out the defendant's denial, his counsel's failure to object, and the judge's later instruction that questions are not evidence. The Commonwealth does not claim that the prosecutor had any basis for the question, and it agrees that the question was improper in any event. We agree with that concession.

There was also the following sequence:

Q. "Now, you were married to your wife how long?"

A. "Thirty-four years."

Q. "And how old were you when you married her?"

A. "A lot older than her."

Q. "She was only about 16 or 17?"

A. "I married her on a, met on a Sunday, married her on a *Monday*."

Q. "And she was about 16/17?"

A. "Yes, she was. And I knew how old she was."

The Commonwealth assures us that the purpose of those questions was not to insinuate that the defendant had a propensity for sexual contact with young females. "Rather, the prosecutor attempted to elicit the information to prove that the defendant was familiar with the appearance of young girls, thereby rebutting the defendant's defense . . . that he did not know and reasonably should not have known that the victim was less than eighteen years old . . . ." This is our

first inkling of the prosecutor's theory, as she did not mention the evidence in her summation.[5]

The Commonwealth's recurring fall-back response to the foregoing criticisms is that only the unsupported braces reference in the summation was objected to and that the improprieties, even taken together, did not create a substantial risk of a miscarriage of justice.

Supreme Judicial Court Rule 3:07, Canon 7, DR 7-106, as appearing in 382 Mass. 787 (1981), provides:

> "(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:
>
> "(1) State or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence.
>
> "(2) Ask any question that he has no reasonable basis to believe is relevant to the case and that is intended to degrade a witness or other person."

The prosecutor's conduct of this case was a wholesale violation of those precepts.[6] She sought to cause the jury to loathe the defendant. That she may have succeeded was the substantial risk of a miscarriage of justice.

*Judgments reversed.*

BROWN, J. (concurring). I am in full accord with the reasoning and result reached by the majority. I must, however, state once again in an even more emphatic manner that the Commonwealth "must take care to behave itself." *Commonwealth* v. *Mencoboni*, 28 Mass. App. Ct. 504, 508 (1990) (Brown, J., dissenting), quoting from *Commonwealth* v. *Felton*, 16 Mass. App. Ct. 63, 66 (1983). See *Commonwealth* v.

---

[5]The questions about the defendant's wife preceded and may account for his statement of anger toward the prosecutor, *supra* at 792. The defendant's first trial began about two months before this one. It was mistried after two days because the defendant's wife died.

[6]Of course, a criminal appeal is different from a disciplinary rule enforcement proceeding. However, these standards are pertinent here because they relate to trial fairness as well as professional ethics and courtroom civility.

*Tirrell,* 382 Mass. 502, 513 (1981) (Kaplan, J., dissenting). The Commonwealth's conduct here was not merely unprofessional, it was outrageous. This was not a momentary misstep but a persistent course of conduct designed to prejudice the defendant.[1]

This old refrain needs to be repeated. "If prosecutors do not see the *light,* they must be made to feel the heat." *Commonwealth* v. *Kines,* 37 Mass. App. Ct. 540, 544 (1994) (Brown, J., concurring). It is still my hope that ultimately a prosecutor whose misconduct is flagrant will "be required personally to reimburse the Commonwealth for the costs of any resultant retrial." *Commonwealth* v. *Dowdy,* 36 Mass. App. Ct. 495, 503 n.4 (1994) (Brown, J., dissenting).

---

[1]Although we reverse here, the language used in 1977 by Justice Kaplan in *Commonwealth* v. *Johnson,* 372 Mass. 185, 197-198 (1977), bears repeating: "Members of the bar . . . would be most ill-advised to consider that each departure from the norm which is not so grievous as to precipate a reversal of a conviction sets a new and less elevated standard for lawyers' behavior." Justice Kaplan goes on to cite prior cases wherein the court's concern "in this regard has been expressed repeatedly." *Id.* at 198.