COMMONWEALTH vs. PAUL ARNETTE GRIFFITH.

No. 97-P-0422.

Hampden. September 2, 1998. - November 20, 1998.

Present: KASS, FLANNERY, & RAPOZA, JJ.

*Practice, Criminal,* Argument by prosecutor, Comment by prosecutor, Opening statement, Failure to object, Fair trial. *Controlled Substances.*

At a criminal trial, the prosecutor's repeated misconduct and overreaching, when aggregated, deprived the defendant of a fair trial, and a new trial was required. [785-789]

COMPLAINT received and sworn to in the Springfield Division of the District Court Department on September 7, 1993.

The case was tried before *Alphonse C. Turcotte,* J.

*Joseph M. Kenneally* for the defendant.

*Sidney E. Reavey,* Assistant District Attorney, for the Commonwealth.

KASS, J. It was not a good start. Asked to proceed with his opening, the prosecutor[1] began: "Thank you. Ladies and gentlemen, I'd like to introduce Paul Griffith, an individual who peddles drugs here in the City of Springfield, commonly referred to as a drug dealer." That was rather much to say about a defendant charged with a single count of distributing marijuana (G. L. c. 94C, § 32C), as compared with trafficking in marijuana. (G. L. c. 94C, § 32E). We inquire whether an aggregation of excesses by the prosecutor, most not objected to by the defense, deprived the defendant of a fair trial.

Having suggested to the jury in his opening that the defendant Griffith was a career criminal, i.e., that he committed prior bad acts and must be guilty of the crime now charged, the prosecutor proceeded to enlist the jury as an arm of the prosecution. The prosecutor did this by describing the details of the drug

[1]Neither prosecution nor defense counsel on appeal are the same as at trial.

sale, as he proposed to prove them, and then saying about the buyer: "[L]uckily for all of us the man who just bought something from Mr. Griffith is stopped. He's stopped and on his person is a bag of marijuana."

Defense counsel did not object to these remarks, although when his turn to open came, defense counsel made the observation that the case was not about calling somebody names but about a man charged with a criminal offense. Failure to object to prosecutorial overreaching was characteristic of the conduct of the defense. There were objections to but two of seven instances in which the prosecutor stepped over the boundaries of permissible advocacy. We thus review for a substantial risk of a miscarriage of justice. *Commonwealth v. Bourgeois*, 391 Mass. 869, 884 (1984).[2] When proper objections have been taken in some instances, unobjected-to faults may be cumulated and weighed with those claims of error that have been adequately preserved. *Commonwealth v. Gallego*, 27 Mass. App. Ct. 714, 719 n.3 (1989). *Commonwealth v. Kines*, 37 Mass. App. Ct. 540, 543 (1994). Compare *Commonwealth v. Bourgeois*, 391 Mass. at 885. We conclude that the multiple instances of prosecutorial misconduct, see *Commonwealth v. DeMars*, 42 Mass. App. Ct. 788 (1997), *S.C.*, 426 Mass. 1008 (1998), when aggregated, deprived the defendant of a fair trial and that he is entitled to a new one. As to the prejudicial impact of combined prosecutorial excesses, see also *Commonwealth v. Borodine*, 371 Mass. 1, 11-12 (1976), cert. denied, 429 U.S. 1049 (1977); *Commonwealth v. Burke*, 373 Mass. 569, 577 (1977).

*The instances of prosecutorial overreaching.* In addition to the inflammatory start of his opening, the prosecutor described evidence he was not in a position to introduce. He stated that Griffith twice handed objects to persons in exchange for money when, in fact, the government's witnesses never saw money changing hands. He also stated as matter of fact that the defendant had been involved in two drug transactions, although the prosecutor knew that he could not prove the first because

---

[2]We properly could review the objected-to statements under a harmless error standard, and the unobjected-to statements under the miscarriage of justice standard. See, e.g., *Commonwealth v. Mayne*, 38 Mass. App. Ct. 282, 286-287 (1995). However, since we conclude that all of the prosecutor's missteps taken together created a substantial risk of a miscarriage of justice, we simplify our analysis by employing that standard alone. See, e.g., *Commonwealth v. DeMars*, 42 Mass. App. Ct. 788 (1997), *S.C.*, 426 Mass. 1008 (1998).

the police saw no drugs, found no money on the defendant, and had not been able to stop the putative buyer.

On two occasions, the prosecutor asked a police officer who had Griffith under surveillance what the officer, in his opinion, had seen. The officer on one occasion answered: "It was a marijuana transaction." On the second occasion he replied: "I observed another marijuana transaction." The trouble with those answers is that they offer an opinion about the ultimate question that the jury were to decide. The answers were of a sort disapproved in *Commonwealth* v. *Woods*, 419 Mass. 366, 374-375 (1995), and *Commonwealth* v. *Rivera*, 425 Mass. 633, 645-646 (1997).[3] Standing alone, the twice-committed error was not consequential because the defendant did not dispute that the police had observed a drug transaction but insisted that he had played no part in it. Included as part of the conclusion with which the prosecution began, that the defendant was a career street dealer, the unqualified statements of marijuana sales having taken place may have had some piling on effect.

Griffith took the witness stand in his defense to say that while he was hanging around both in and outside the Charm Café on State Street in Springfield, he did not participate in drug selling, although he admitted referring two men who asked to buy drugs to a man on a bicycle who Griffith figured might be selling. On cross-examination, the prosecutor, over objection, asked the defendant: "And you looked at him [Sergeant John Delaney] and you said, 'Hey, John, you don't have anything on me. Leave me alone.' " What was the matter with that question was that the prosecutor, as he conceded during a colloquy at side bar, had no evidence that Griffith had said such a thing.[4] Yet putting the question and having Griffith deny it ran the risk of suggesting to the jury that Griffith was on a first name basis with Sergeant Delaney, was conscious of guilt, but confident that no

---

[3]It is one thing — and permissible — for an experienced police officer to testify about the general practices of street drug dealers and to say that the movements observed are consistent with a drug transaction (but see *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. 576 [1998]); it is another for the officer to state that there was a drug transaction. In this case, the officer's statement has a particularly tailor-made quality: how would the officer, peering through binoculars, know whether the drug passing was marijuana as opposed to cocaine or heroin?

[4]Defense counsel, protesting, said: "Well, you said did he say something to Officer Delaney. You must have known — ." The prosecutor broke in: "I did not. I don't even know if this is true."

evidence existed to prove it. A lawyer may not attempt to communicate by innuendo by asking questions that the lawyer expects to be answered in the negative. *Commonwealth* v. *White*, 367 Mass. 280, 284 (1975). *Commonwealth* v. *Fordham*, 417 Mass. 10, 20-21 (1994). *Commonwealth* v. *Capone*, 39 Mass. App. Ct. 606, 611 (1996). The Commonwealth argues that Griffith, after denying the "you don't have anything on me" statement, amplified his response with something equally damaging to him: "I said, 'What are you all trying to do, try to plant something on me.' " The latter statement, however, expresses a claim of innocence rather than a consciousness of guilt, and, more to the point, would not have been made but for the prosecutor's improperly loaded question.

In closing, defense counsel pressed the jury to find that the government had proved no more than that Griffith was present at the drug sale. The prosecutor began his closing thus:

> "Were we listening to the same case? Were we in the same courtroom with the defendant? I mean, September 3rd [*sic*] of 1993, ladies and gentlemen, without any doubt at all the defendant was there and he was helping someone deal drugs. . . . As I told you at the beginning of the trial, Mr. Griffith is a common street level dealer, trying to earn a few bucks with the man on the bike and it's as simple and straightforward as that. . . . But you see, the entrepreneur, the little businessman, Griffith, is trying to earn some extra money, so as I told you at the beginning of all of this, it is not as if he can hold out a sign and tell all his customers that he is open for business and welcome, come on in."

Hyperbole in closing arguments is hardly rare, and juries should be given credit for the ability to filter out oratorical flourishes. *Commonwealth* v. *Kozec*, 399 Mass. 514, 517 (1987). *Commonwealth* v. *Murchison*, 418 Mass. 58, 60 (1994). Nonetheless, the beginning of the closing had a dogmatic "take it from me" quality that the cases have declared to be impermissible. *Commonwealth* v. *Coleman*, 366 Mass. 705, 713-714 (1975). *Commonwealth* v. *Villalobos*, 7 Mass. App. Ct. 905 (1979). The remarks about Griffith being an entrepreneur and common street dealer were unsupported by the evidence. There was evidence from a police officer that the movements of Griffith and the bicyclist conformed to the modus operandi of a

street dealer, but no evidence that the defendant had been observed at other times behaving in similar fashion. The evidence was that the police observed Griffith for forty minutes, and the complaint brought against him was a single count of having distributed marijuana on September 5, 1993. Compare *Commonwealth* v. *Chavis,* 415 Mass. 703, 705, 714 (1993), in which the defendant sold cocaine to an undercover police officer and told the officer he could make similar buys in the future, thereby laying a solid basis for being referred to as a drug dealer.

Following the prosecutor's closing argument, defense counsel made objections to a dismissive remark by the prosecutor about defense counsel's closing argument and about two instances of the prosecutor having vouched for the credibility of his witnesses. Assertion of personal opinion as to the credibility of witnesses is proscribed by S.J.C. Rule 3:07, DR 7-106(C)(4), 382 Mass. 787 (1981), and the cases.[5] *Commonwealth* v. *Bourgeois,* 391 Mass. at 878. *Commonwealth* v. *Ciampa,* 406 Mass. 257, 265 (1989). *Commonwealth* v. *Nicholson,* 20 Mass. App. Ct. 9, 17-18 (1985). *Commonwealth* v. *Mayne,* 38 Mass. App. Ct. 282, 286 (1995). In that respect, the prosecutor was on the verge several times, but probably not over it, except when he said:

> "And by the way, when [defense counsel] suggests to you that the police are making, maybe a mistake, what you have to say to buy into his story is that the police are lying to you because what the police told you was' nothing that they can make a mistake on. They told you that he was out there and without any instructions, with binoculars Griffith is out there for an extended period of time waving people over and had conversation and conducted two different drug transactions. That's no mistake. If you don't buy into the story, call him [apparently referring to one of the police officers] a liar, but I am suggesting to you by no means are these men lying to you. By no means are these men not telling the truth. They have nothing to gain."

This the prosecutor said just before winding up his closing. Unlike the isolated extravagant statement in an otherwise

---

[5]The prohibition against vouching for a witness, as of January 1, 1998, appears as S.J.C. Rule 3:07, Mass.R.Prof.C. 3.4(e), 426 Mass. 1389 (1998).

unobjectionable closing in *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 746 (1990), excess in the instant case was a repetitive characteristic of the closing argument. Among the criteria that courts examine in deciding whether prosecutorial error in closing arguments warrants reversal is whether that error was sporadic in relation to the whole, or whether errors suffused the entire argument. See *Commonwealth* v. *Howell*, 396 Mass. 654, 662 (1985); *Commonwealth* v. *Kozec*, 399 Mass. at 518. When he charged the jury, the trial judge instructed that the opening statements and closing arguments were not evidence, that lawyers sometimes make reference to material not in evidence, that they venture an opinion about the quality of the evidence, but that it was for the jury to weigh and evaluate the evidence. Pointed corrective instructions have rescued cases tainted with prosecutorial error. See *Commonwealth* v. *Olszewski*, 416 Mass. 707, 726-727 (1993), cert. denied, 513 U.S. 835 (1994), but as examples of the insufficiency of boilerplate charges resembling the one given here, see *Commonwealth* v. *Gallego*, 27 Mass. App. Ct. at 720; *Commonwealth* v. *Ward*, 28 Mass. App. Ct. 292, 296 (1990); *Commonwealth* v. *McLeod*, 30 Mass. App. Ct. 536, 540 (1991). Here, the consistent and, on the evidence, unwarranted characterization of the defendant as a career drug dealer, from the beginning of the case to the end of the case achieved a saturation level that deprived Griffith of a fair trial. See *Commonwealth* v. *DeMars*, 42 Mass. App. Ct. at 790-794; *Commonwealth* v. *Jackson, ante* 666, 672 (1998).

We need not consider the defendant's other point on appeal, protesting that the judge did not instruct the jury about the necessity of finding presence in order to convict Griffith as a joint venturer in the drug sale. There is no merit to the argument. Griffith's presence was never denied.

*Judgment reversed.*

*Verdict set aside.*