## COMMONWEALTH vs. CHARLES HIOTES.[1]

No. 01-P-170.

Bristol. June 20, 2002. - June 3, 2003.

Present: BECK, COWIN, & MILLS, JJ.

*Practice, Criminal,* Psychiatric examination, Argument by prosecutor.

The judge hearing a motion for a competency evaluation of the complainant in a criminal action did not abuse his discretion in denying the motion, where the judge's ruling was consistent with the tendency, except in quite clear cases of incompetency, to let the witness testify and have the jury make any proper discount for the quality of the witness's understanding. [256-257]

Where the prosecutor at a criminal trial improperly commented during her closing argument on the absence of psychiatric evidence of the complainant's alleged mental illness and argued that the defendant's closing argument was based on prejudice against the mentally ill, and where the defendant timely objected to the improper argument, the judge's curative instructions, which were not given until after the jury had heard the remainder of the prosecutor's closing argument and after the judge had given other instructions, and which did not comment at all on the prosecutor's attempt to portray the defense as based on prejudice against the mentally ill, were insufficient to overcome the effect of the improper argument, which may have made a difference in the jury's verdict. [259-261]

INDICTMENT found and returned in the Superior Court Department on May 28, 1998.

A pretrial motion for a competency evaluation of a witness was heard by *John A. Tierney*, J., and the case was tried before him.

*Eric S. Brandt*, Committee for Public Counsel Services, for the defendant.

*Steven E. Gagne*, Assistant District Attorney, for the Commonwealth.

---

[1]As is our custom, we spell the defendant's name as it appears on the indictment.

BECK, J. The defendant appeals from his conviction of rape of a seventy-seven year old female acquaintance. He claims that (1) the judge abused his discretion in denying the defendant's motion for a psychiatric examination of the complainant; and (2) the prosecutor's closing argument was improper.

*Pretrial motion for examination of mental status.* A week before trial, the defendant filed a motion for a competency evaluation of the complainant, pursuant to G. L. c. 123, § 19. An accompanying affidavit from trial counsel averred that the complainant "possibly experiences auditory hallucinations and vague delusions," and occasionally talks to "space people." The Commonwealth opposed the motion.

General Laws c. 123, § 19, "enhanc[es] a trial judge's jurisdiction to determine . . . competency to testify." *Commonwealth* v. *Widrick,* 392 Mass. 884, 887-888 (1984). "[It] operates as a supplement to a judge's traditional method of assessing competency, e.g., the voir dire." *Id.* at 888, citing *Commonwealth* v. *Fillippini,* 1 Mass. App. Ct. 606, 609 (1973). A judge's decision whether to order such a test is discretionary. See G. L. c. 123, § 19; *Commonwealth* v. *Doucette,* 22 Mass. App. Ct. 659, 665 (1986), *S.C.,* 400 Mass. 1005 (1987).

Based on the complainant's responses to questions from the judge, the prosecutor, and defense counsel at voir dire, the judge reasonably could have concluded that the complainant knew her name, address, and age; how far she went in school; what an oath is; her obligation to tell the truth; and the consequences of failing to do so. The complainant also acknowledged that she occasionally talked to or about space people, and that she heard their voices. At the conclusion of the hearing, the judge denied the defendant's motion.

The judge did not abuse his discretion. His ruling was consistent with " '[t]he tendency . . . except in quite clear cases of incompetency . . . to let the witness testify and have the [jury] make any proper discount for the quality of her understanding.' . . . [U]nder the modern trend, a judge may accept as competent for testimony a witness whose reliability is, in [his] judgment, at most, marginally sufficient." *Demoulas* v. *Demoulas,* 428 Mass. 555, 563-564 (1998), quoting from *Commonwealth* v. *Whitehead,* 379 Mass. 640, 656 (1980). Contrast

*Commonwealth* v. *Monzon*, 51 Mass. App. Ct. 245, 252 (2001) (jury should not have been allowed to consider the testimony of a child who said she did not know the difference between the truth and a lie).

*Trial.* Briefly, the facts disclosed at trial were as follows. The complainant and the defendant apparently met when the defendant helped the complainant start her car when it broke down at a coffee shop the complainant often patronized. Later the defendant performed chores for the complainant, including fixing her roof. They appeared to have a friendly relationship. After an elder services case worker began visiting the complainant once a month to persuade her to accept services, the complainant disclosed to the worker that the defendant poked his front end into her front end, that it hurt, and that she wanted it to stop. Hospital examination disclosed some abnormalities in her perineal area, but their relevance was not clear.

The complainant's testimony revealed that her memory was impaired. For example, she did not remember whether she still had her car, whether she had gone to the hospital, or that she had been questioned (on voir dire) earlier on the day she testified. Two of the Commonwealth's witnesses, a neighbor and a Department of Mental Health (DMH) employee who performs emergency psychiatric assessments, testified that the complainant talked about space people. The complainant's testimony about her conversations with space people was guarded.

*Closing argument.* In his closing argument, defense counsel argued that the complainant was not a reliable witness. He reminded the jury of the DMH employee's testimony that the complainant had told the DMH employee she talked to space people and wondered whether space people had something to do with her falling down the stairs. Defense counsel made clear he was not arguing that the complainant deliberately lied, but rather that she was not reliable. He also asserted that there was no evidence corroborating the complainant's confused account and faulted the Commonwealth for failing to have the bed linens tested.

The prosecutor immediately challenged the defendant's argument. She argued:

"[Defense counsel] tells you, well, she's not a liar, but she's mentally ill. How can you believe her? How can you believe her if we don't have five hundred people to testify about a crime that happens between only two? How can you just believe her alone? Well, she's mentally ill.

"Do you have any evidence from any expert to say she's been diagnosed with a mental illness? Have you heard any testimony from any expert to say that the fact that she hears space people means that she doesn't know truth from reality, that means she can't recall things, that means she's not based in reality? No, you haven't heard from one expert, have you, to say anything like that. You heard from [the DMH employee], but he's only a clinician. He can't give you that type of expert opinion.

"The defendant's argument to you, that she's mentally ill, so she isn't reliable, is based on an underlying premise of prejudice, bigotry and fear of people whose mental status is different from everyone else."

Defense counsel objected, but the judge overruled the objection. The prosecutor continued:

"He wants to make you believe, just because she hears voices, that somehow she can't tell you the truth, that she doesn't know what happened to her and that something bad happened to her. Little children have imaginary friends all the time. Does that mean they can't tell you if somebody hurt them? Is that not a gigantic leap? It is, and it's premised on your fears and your prejudice of the unknown and mental illness, a mental illness that we don't even know what it is and we don't know that she's ever been diagnosed with one."

At the conclusion of the prosecutor's argument, the jury took its morning recess. While the jury were out of the room, defense counsel repeated his objection to the prosecutor's closing argument. He contended that the Commonwealth's argument regarding the need for expert testimony constituted burden shifting. He also claimed the prosecutor's argument that the defense was based on appealing to prejudice against the mentally ill was improper. The Commonwealth responded that

its argument consisted of fair and reasonable inferences in response to the defendant's arguments.

The judge did not rule on the defendant's objections but merely directed, "Okay. Want to bring down the jury." He then commenced his instructions to the jury, which consume over thirty pages of transcript. He began with standard admonitions — instructing the jury to be completely fair and impartial, not to be swayed by prejudice or sympathy, and not to be swayed by the judge's rulings on motions or objections. He also instructed them that argument is not evidence, that the burden of proof lies with the Commonwealth, that the defendant is presumed innocent, and that the defendant has no burden.

Then, two-thirds of the way through his instructions, perhaps thinking better of his earlier ruling, the judge advised the jury:

> "[Y]ou may have heard the prosecutor argue that the defense presented no expert witness as to [the complainant's] mental condition. That argument is improper, and you are to disregard it. The defendant doesn't have to present any evidence at all in his own defense in this case. It's the Commonwealth's obligation to prove its case beyond a reasonable doubt."

There was no instruction concerning the prosecutor's argument to the jury that the defendant's closing argument was based on prejudice against the mentally ill.

*Discussion.* While acknowledging that the prosecutor's argument had the "potential . . . of misleading the jury into believing that the defendant should have produced evidence of the complainant's alleged mental illness," the Commonwealth argues that the judge's instructions "prevented the jury from being misled." The defendant claims the judge's instruction did not cure the error.

"It was improper for the prosecutor to comment on the absence of the psychiatric [evidence]." *Commonwealth* v. *Silanskas*, 433 Mass. 678, 701 (2001). "[T]he Commonwealth may not comment on the defendant's failure to produce evidence," *ibid.*, particularly when it was the Commonwealth that opposed the defendant's motion for the competency examination while acknowledging the victim had "mental infirmities." See *Com-*

*monwealth* v. *Haraldstad*, 16 Mass. App. Ct. 565, 568 (1983). Defense counsel having objected to the prosecutor's argument, we consider whether there was prejudicial error, see *Commonwealth* v. *Alphas*, 430 Mass. 8, 13-14 n.7 (1999), applying the factors governing such determinations as set out in the case law. See *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 (1987); *Commonwealth* v. *Santiago*, 425 Mass. 491, 500 (1997).

While a judge's curative instructions can often save the day, we conclude that in this case they did not. See *Commonwealth* v. *Kozec, supra* (improper final argument must be evaluated on a case-by-case basis; there are no satisfactory bright line rules). Here, as the defendant points out, the expert testimony issue was the first point the prosecutor made in her closing. The argument went to "the very heart of the case" — the credibility of the complainant. *Commonwealth* v. *Fredette*, 56 Mass. App. Ct. 253, 264 (2002), quoting from *Commonwealth* v. *Shelley*, 374 Mass. 466, 471 (1978). Defense counsel objected immediately, and again at the conclusion of the prosecutor's closing. The judge eventually gave curative instructions, but not until the jury had heard the remainder of the prosecutor's closing (including more about the need for expert testimony), and approximately two-thirds of the judge's other instructions. We think this case is one where the timing and placement of the curative instructions was important. See Smith, Criminal Practice and Procedure § 1851 (2d ed. 1983 & Supp. 2003). Compare *Commonwealth* v. *Silanskas*, 433 Mass. at 701 ("judge immediately corrected any mistaken impression about the absence of evidence at the time of the improper remark and admonished the prosecutor before the jury"). See *Commonwealth* v. *Pearce*, 427 Mass. 642, 646 (1998) (reminding trial judges that they have authority to interrupt improper argument). Cf. *Commonwealth* v. *Smith*, 387 Mass. 900, 911 n.7 (1983) (as to clear prosecutorial excesses, "preferable practice is for the judge to intervene then and there"). We also note that the judge did not comment at all on the prosecutor's attempt to portray the defense as based on prejudice against the mentally ill, an argument we consider also to have been improper.

Viewing the prosecutor's closing argument in the context of the trial as a whole, we conclude that the improper remarks

may have made a difference in the jury's verdict. See *Commonwealth* v. *Kozec, supra,* 399 Mass. at 518; *Commonwealth* v. *Alphas,* 430 Mass. at 14 n.7. The judgment is therefore reversed, the verdict is set aside, and the case is remanded for a new trial.

*Judgment reversed.*

*Verdict set aside.*