After a jury trial in the Superior Court, the defendant, Walter Lopes, Jr., was convicted of two counts of indecent assault and battery on an intellectually disabled person, and one count of indecent assault and battery.[2] On appeal, he contends that (1) the judge abused his discretion in denying his motion for a mental status examination of the victim, (2) the prosecutor's closing argument created prejudicial error, and (3) the judge erred in denying his motion for required findings of not guilty. We affirm.[3]
Background. At the time of the incident, the victim was a client of the Department of Developmental Services. She had been diagnosed with "mild mental retardation," but was "high functioning." She lived in Brockton with her adult foster care provider, and needed assistance with certain activities of daily living, such as shopping, cooking, finances, and transportation. The victim was her own guardian, had graduated from high school, had children, and was capable of consenting to sexual activity. She attended a program at a day habilitation center (center) in Stoughton where she watched movies, exercised, and worked on daily living skills. The defendant worked in the fitness room at the center. The victim viewed the defendant as a friend.
On the evening at issue, the defendant drove the victim and another intellectually disabled client of the center, "Tom,"[4] to dinner. Tom thought that he was on a date with the victim. Following dinner, the defendant dropped Tom off at his home, drove to a park near Brockton High School, and parked near some benches. There, he joined the victim in the back seat of the vehicle and said, "[D]o you want to do this." The victim said, "[Y]ou're married.... I don't want to do this. Take me home." Thereafter, the defendant touched the victim's breasts with his hands over her clothes, touched her "between the legs," tried to pull down her pants, put his fingers in her vagina, and touched her with his penis. The victim told him that he was a married man, and he stopped. He asked if she wanted to "go underneath the bleachers." The victim said that she did not. The defendant then told the victim not to say anything about the incident. Following the incident, the defendant returned to Tom's home and told Tom not to tell anyone at the center about the dinner.
Based on the evidence and the reasonable inferences drawn therefrom, the jury could have also found that the defendant wrote and gave the victim some letters that were introduced as exhibits at trial. The letters repeatedly describe the defendant's love for the victim, and contain vivid descriptions of his sexual fantasies and desires toward her. The defendant asked her to destroy the letters, but she kept them. Employees of the center observed the defendant whispering in the victim's ears, holding her hand while she was on the treadmill, and rubbing her shoulders. One employee saw the defendant and victim embracing in a conference room, and jumping apart as the employee entered the room.
Discussion. 1. Motion for mental evaluation. The defendant contends that the judge erred in denying his motion for a mental status examination of the victim pursuant to G. L. c. 123, § 19.[5] That statute authorizes a judge to "request the department [of mental health] to assign a qualified physician or psychologist" to "make such examinations [of a party or witness] as the judge may deem necessary."[6] A judge's decision whether to order such a test is discretionary. See G. L. c. 123, § 19 ; Commonwealth v. Hiotes, 58 Mass. App. Ct. 255, 256 (2003). Here, there was no abuse of discretion.
"Whether a witness is competent is first determined by the judge." Commonwealth v. Monzon, 51 Mass. App. Ct. 245, 248 (2001). To determine a witness's competency, a judge will apply a two-pronged test: "(1) whether the witness has the general ability or capacity to observe, remember, and give expression to that which she has seen, heard, or experienced; and (2) whether she has understanding sufficient to comprehend the difference between truth and falsehood, the wickedness of the latter and the obligation and duty to tell the truth, and, in a general way, belief that failure to perform the obligation will result in punishment." Ibid. (quotations omitted). We apply this test "regardless of whether the witness is an adult, child, or subject to some disability." Ibid. In the present case, the judge held a pretrial competency hearing six weeks before trial. At the conclusion of the hearing, the judge denied the motion for a mental status examination, and detailed his findings on the record. The defendant claims that although the second prong of the competency test may have been met, the "first prong of the test was effectively ignored," and thus the mental status evaluation should have been allowed. We disagree.
Contrary to the defendant's argument, the judge observed the witness testify and undergo thorough cross-examination at the hearing, and comprehensively addressed the first prong of the competency test in his findings.[7] Indeed, the judge reiterated the appropriate legal standard, and found that the victim "has the general ability and capacity to observe events, process the information, remember the information and give a coherent description of events that she has observed." He found that she "speaks well," is "articulate," and has a "respectful, polite manner of testifying." The judge elaborated that "[s]he ... was trying to listen to the questions and understand the questions and trying to answer them truthfully." The judge concluded his findings as follows:
"I've observed this witness carefully. I've listened to counsels' questions. I've observed the records submitted by counsel and the arguments and the case law. And I find that under the governing standards cited in the cases by the parties, the witness is competent, able to present testimony to the trial and has allowed the fact finder to make determinations of how reliable, how accurate, how honest, as well as whether her testimony is mistaken."
The judge's findings were comprehensive, clear, and supported by the record. Although there were considerable inconsistencies in the witness's testimony, and in the story she told over time, the jury were in the best position to observe and evaluate her credibility. See Hiotes, supra at 256.[8] Furthermore, the victim's trial testimony similarly demonstrated her ability to recall and convey what she had seen and experienced.[9] See Commonwealth v. Thibeault, 77 Mass. App. Ct. 419, 424 (2010) ("In reviewing a trial judge's ruling on the competency of a witness, we will examine both the preliminary hearing and the witness's trial testimony"). There was no abuse of discretion. See Commonwealth v. LeFave, 407 Mass. 927, 942 (1990), quoting from Commonwealth v. Tatisos, 238 Mass. 322, 325 (1921) ("It is seldom that the discretion of the trial judge can be revised; its exercise must have been clearly erroneous to justify such action"); Monzon, supra at 248, 249 (noting that judge's determination of witness's competency will usually survive appellate scrutiny).[10]
2. Prosecutor's closing argument. The defendant contends that the prosecutor erred in (1) asking the jury to "please find [the defendant] guilty," and (2) vouching for the credibility of the victim. We disagree.
The defendant objected to the prosecutor asking the jury to "please" find the defendant guilty. We thus review for prejudicial error. Commonwealth v. Bresilla, 470 Mass. 422, 437 (2015). Viewing the closing argument "in its entirety," as we must, we are not persuaded that a single request to find a defendant guilty constituted prejudicial error. Commonwealth v. Caswell, 85 Mass. App. Ct. 463, 473 (2014). The statement did not amount to an appeal to sympathy or bias, and we attribute a certain amount of sophistication to a jury. See Commonwealth v. Kozec, 399 Mass. 514, 516-517 (1987). Moreover, at defense counsel's request for an instruction on this topic, the judge instructed the jury as follows:
"If an attorney is trying to summarize the evidence and urge a conclusion, that's not an attorney giving his or her belief about what must be done or what should be done. Assessing the evidence and deciding, in a fair way, based only on the evidence, is for the jury to decide. And it's not for the attorneys to give a personal belief. So if it sounded like that, you must disregard it. They're trying to do their job professionally, but, sometimes, it may sound like a personal belief. If it sounded like that, it must be disregarded. You decide the case based only on the evidence and the jury's collective reasoning powers applied to the evidence in a fair way."
The defendant did not object to this curative instruction. Furthermore, the judge twice instructed that closing arguments are not evidence. The instructions were thorough and accurate, and we presume the jury followed them. See Commonwealth v. Cortez, 438 Mass. 123, 130 (2002).
The defendant next contends that the prosecutor improperly vouched for the victim's credibility by asking the jury not to hold any memory lapses against the victim "because of her disability," and by suggesting that the victim was "trying her best, but her cognitive abilities sometimes limit her from communicating things the way you and I may be able to." As there was no objection to these statements at trial, review is limited to whether the alleged error created a substantial risk of a miscarriage of justice. See Commonwealth v. Fitzgerald, 376 Mass. 402, 416 (1978). Viewed in the context of her entire closing, the prosecutor was arguing from the evidence that the victim should be believed. See Commonwealth v. Brewer, 472 Mass. 307, 315 (2015) ("[W]e consistently have held that, where the credibility of a witness is an issue, counsel may argue from the evidence why a witness should be believed") (citations and quotations omitted). Even assuming, arguendo, that there was error, we discern no substantial risk of a miscarriage of justice. This is not a case where the prosecutor's closing argument had a "dogmatic 'take it from me' quality that the cases have declared to be impermissible." Commonwealth v. Griffith, 45 Mass. App. Ct. 784, 787 (1998). As discussed above, the judge twice instructed the jury that closing arguments are not evidence, and clearly instructed the jurors that they were the sole judges of credibility. See Brewer, supra at 315 ("[T]he judge's careful and clear instructions concerning the role of the closing arguments and how to determine the credibility of witnesses adequately offset any semblance of impropriety, were we to determine that one occurred").
3. Sufficiency of the evidence. The defendant claims that the judge should have allowed his motion for a required finding of not guilty. He does not specify which convictions, or which elements of the convictions, could not have been found beyond a reasonable doubt by a rational trier of fact. Rather, he contends that the victim's testimony was inconsistent, lacking in credibility, and so manifestly unreasonable that it could not support a conviction on the charges. We review to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting from Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).
Contrary to the defendant's claim, the victim's testimony was sufficient to survive the motion for required findings. To the extent that there were inconsistencies in her testimony, it was for the jury to resolve them. See Commonwealth v. Platt, 440 Mass. 396, 400 (2003). Furthermore, the Commonwealth presented substantial evidence corroborating the victim's testimony. See note 8, supra. The judge properly denied the motion.
Judgments affirmed.

The defendant was charged with one count of rape, but was convicted on the lesser included offense of indecent assault and battery.

The defendant was also charged with one count of assault by means of a dangerous weapon and one count of abuse or neglect by a caretaker. The judge granted the defendant's motion for a required finding of not guilty as to these two counts.

A pseudonym.

Prior to trial, the defendant moved to dismiss the indictments pursuant to Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982), claiming that the grand jury did not hear sufficient evidence to support a probable cause determination that the victim was intellectually disabled. That motion was denied. The defendant was entitled to pursue multiple strategies in his defense. See, e.g., Commonwealth v. Eberle, 81 Mass. App. Ct. 235, 242 (2012).

See G. L. c. 123, § 19, inserted by St. 1986, c. 599, § 38 ("In order to determine the mental condition of any party or witness before any court of the commonwealth, the presiding judge may, in his discretion, request the department to assign a qualified physician or psychologist, who, if assigned shall make such examinations as the judge may deem necessary").

Although the defendant does not contest the judge's findings regarding the second prong of the competency test, we note that the judge made specific, clear, and thorough findings regarding the victim's comprehension of the difference between truth and falsity, understanding that testifying in court is a serious matter, and understanding that the failure to testify truthfully may have harmful consequences to the fairness of the proceedings as well as to herself. We discern no error or abuse of discretion in this regard.

We are not persuaded by the defendant's claim that this case is comparable to Commonwealth v. Santos, 402 Mass. 775 (1988). That case involved, inter alia, an identification issue in which an intellectually challenged witness stated that the assailants had "brown faces, yet he identified two white males, a police detective and a member of the defense staff as two of [the victim's] assailants" during a stationhouse identification. Id. at 780. No comparable issues exist in the present case. In addition, here, the victim was her own guardian, had graduated from high school, had children, and, as the judge found, demonstrated a capacity to observe, remember, and give expression to that which she has seen and experienced. Contrast Santos, supra at 780.

We note that the victim's trial testimony was corroborated by evidence introduced at trial. The evidence of the defendant's attempt to cover his tracks by telling the victim and Tom not to say anything could have been viewed by the jury as demonstrating consciousness of guilt. Furthermore, the evocative love letters given by the defendant to the victim could have been accepted by the jury as evidence of the defendant's state of mind and motive.

We are not persuaded by the defendant's secondary argument that the judge limited his ability to examine the victim's therapist regarding the victim's purported tendency to fabricate stories. Defense counsel called various witnesses at trial, including the victim's therapist. The therapist testified, inter alia, that during her meetings with the victim in the days and weeks following the alleged sexual assault, the victim did not exhibit signs of emotional distress and appeared to be doing well, and that the victim had abandonment and rejection issues that "would probably affect her more deeply than some other people." She also asked the therapist whether "making up stories [was] a behavior that [she] observed as part of [the victim's] disability or mental condition as of 2010?" The therapist responded that she "had seen it on occasion ... [I]t was mostly about things that weren't real important." In addition, defense counsel conducted a thorough and vigorous cross-examination of the victim, and highlighted inconsistencies and contradictions in her testimony. The defense was not unfairly or improperly limited. See generally Commonwealth v. LaVelle, 414 Mass. 146, 154 (1993).