In January of 2012, the defendant shot his fifteen year old son in the stomach and then shot himself. Both survived. At trial the defendant conceded that he had shot his son but claimed that he was not criminally responsible because of a mental disease or defect. Rejecting that theory, the jury convicted the defendant of two counts of armed assault with intent to murder, aggravated assault and battery by means of a dangerous weapon, and various firearms charges. He appeals, arguing that the judge abused his discretion by allowing a lay witness to give expert opinion testimony, and that the prosecutor made statements in his closing argument that shifted the burden of proof to the defense. We affirm.
1. Lay witness testimony. One of the Commonwealth's witnesses was emergency medical technician Christopher Ebert, who was in the ambulance with the defendant as he was being transported to the hospital. During direct examination the prosecutor asked Ebert whether he was "familiar with the term alert and oriented times three." Ebert replied that it means "[a] person [who] is alert to time, place and event" and, to make that determination, an emergency medical technician asks three questions-"their name, where they are and what's going on." He then testified that the defendant was "alert and oriented times three" after the shooting because he was able to respond to the three questions by stating "his name, where he was and eventually the event that happened that night."
The defendant contends that the judge should not have allowed Ebert, a lay witness, to testify that the defendant was "alert and oriented times three" because that testimony amounted to expert opinion. We disagree. An expert opinion is one based on "scientific, technical, or other specialized knowledge that will assist the jury in understanding a fact in issue." Commonwealth v. Canty, 466 Mass. 535, 541 (2013). See Mass. G. Evid. § 702 (2017). A lay opinion, in contrast, is one that "lies within the realm of common experience." Canty, 466 Mass. at 542. A lay opinion is admissible if it is "(a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness's testimony or in determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." Id. at 541, quoting from Mass. G. Evid. § 701 (2013). Furthermore, "[t]he rule that [lay] witnesses in describing conduct should tell what they saw and heard does not foreclose the use of words of summary description." Kane v. Fields Corner Grille, Inc., 341 Mass. 640, 647 (1961). Accord Canty, 466 Mass. at 544.
Here, Ebert's testimony that the defendant was "alert and oriented times three" was proper lay opinion, and not expert opinion. It does not take any scientific, technical, or specialized knowledge to determine whether a person knows his name, where he is, or what is happening at the time. Cf. id. at 541-542 (lay witness may testify as to defendant's level of intoxication). The phrase "alert and oriented times three" is simply shorthand or a "summary description" of a person's ability to answer these three basic questions. Kane, 341 Mass. at 647. The judge did not abuse his discretion in admitting this testimony.
Moreover, even were we to assume error, it was not prejudicial.[2] Although the defendant argues that the testimony went to the ultimate issue at trial-whether the defendant was criminally responsible-Ebert acknowledged on cross-examination that the three questions were "not designed for the purpose of doing a full mental health screen" and would not allow him "to make that kind of assessment." In addition, the references to "alert and oriented times three" were fleeting and dwarfed by other evidence that went squarely to the issue of whether the defendant suffered from a mental disease or defect rendering him not criminally responsible.[3] The prosecutor also did not refer to Ebert's testimony in his closing argument. In these circumstances "we conclude, with fair assurance, that the jury's judgment was not substantially swayed by [any] error." Canty, 466 Mass. at 545.
2. Burden shifting. The defendant next argues that the prosecutor engaged in improper burden shifting when he asked the defendant's expert witness, Dr. Robert Mendoza, if he interviewed the defendant, spoke with his family and friends, or reviewed the police reports. Because the defendant did not object to this questioning at trial, we review his challenge to determine whether there was error and, if so, whether it created a substantial risk of a miscarriage of justice. See Commonwealth v. Freeman, 352 Mass. 556, 563-564 (1967). We discern no error. During direct examination Mendoza testified generally about the standard for criminal responsibility, the process for conducting a criminal-responsibility evaluation, and the symptoms exhibited by people who have certain mental illnesses or brain injuries. In response, the prosecutor sought to elicit on cross-examination that Mendoza had no information particular to this case on which he could form an opinion as to the defendant's criminal responsibility. The prosecutor's questions were entirely appropriate and did not constitute burden shifting. Cf. Commonwealth v. Miranda, 458 Mass. 100, 116 (2010) (prosecutor is allowed "to respond to arguments raised by the defense").
The defendant also argues that the prosecutor engaged in burden shifting during his closing argument. Specifically, the defendant challenges the following passages:
"Was there any neurological or psychological examination conducted on [the defendant] afterwards? Dr. Mendoza talked a whole lot about what needs to be done to make any sort of definitive diagnosis of a neurological disease or condition that compels you to fail to be able to behave yourself, right? Any of that done in this case?"
"Didn't [Dr. Mendoza] tell you that an interview with the defendant is of paramount importance in conjunction with interviewing family and friends? Vitally important right?"
Because the defendant objected to these statements at trial, we review for prejudicial error. See Commonwealth v. Bresilla, 470 Mass. 422, 437 (2015).
Viewing the statements in the context of the entire argument, we conclude, as did the judge, that they did not cross the line into burden shifting. After making the statements, the prosecutor immediately went on to assert: "That's what the Commonwealth produced for you. A case study, right? About what happened." He then reviewed the extensive evidence of the defendant's medical history and his behavior leading up to and following the shooting. When placed in context, therefore, the remarks were "merely [a] comment on the evidence put before the jury, not a reflection on the absence of evidence." Commonwealth v. Francis, 450 Mass. 132, 141 (2007). See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 141-142 (prosecutor did not engage in burden shifting by asserting "that there was no real evidence of the defendant's mental illness" where remarks, in context, "referred to the evidence the defendant did produce").[4]
Furthermore, the judge proceeded to give thorough instructions on the law of criminal responsibility, making clear that the burden of proof rests with the Commonwealth to "prove beyond a reasonable doubt that the defendant was criminally responsible at the time the alleged crime was committed. The burden is not on the defendant to prove a lack of criminal responsibility." We presume that the jury followed these instructions. See id. at 143.
Judgments affirmed.

The parties disagree as to whether the defendant preserved his objection, but the disagreement is not material to our analysis. Our conclusion is the same whether we review for prejudicial error or a substantial risk of a miscarriage of justice.

In contrast, Ebert's testimony went not to the defendant's sanity, but to the voluntariness of the statements he made on the night of the shooting.

Because the prosecutor's statements were grounded in the evidence presented, this case is distinguishable from Commonwealth v. Hiotes, 58 Mass. App. Ct. 255, 258-259 (2003), on which the defendant relies.