## COMMONWEALTH vs. RICHARD RODRIQUEZ.

No. 98-P-966.

Plymouth. January 13, 2000. - June 8, 2000.

Present: PORADA, GREENBERG, & RAPOZA, JJ.

*Practice, Criminal,* Comment by prosecutor, Instructions to jury. *Evidence,* Failure to produce witness.

At the trial of indictments for armed assault with intent to murder, assault and battery by means of a dangerous weapon, and unlawful possession of a firearm, the prosecutor improperly argued the defendant's failure to call a certain witness after the judge had indicated he would instruct the jury not to draw any inferences against a party for not calling a witness, and the judge erred in overruling defense counsel's objection to the argument; where the judge's belated corrective instructions to the jury did not cure the errors and where the improper remarks could well have influenced the jury, a new trial was required. [372-375]

INDICTMENTS found and returned in the Superior Court Department on February 6, 1996.

The cases were tried before *Patrick F. Brady*, J.

*Joanne I. DeLong* for the defendant.

*Bridget Norton Middleton*, Assistant District Attorney, for the Commonwealth.

GREENBERG, J. A Superior Court jury convicted the defendant of armed assault with intent to murder (G. L. c. 265, § 18[b]), assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A[b]), and unlawful possession of a firearm (G. L. c. 269, § 10[a]). The assaults in question, on Eric Shaughnessy, took place at 21 Depot Street in Wareham, the residence of Joe Simard and five other people, all in their late teens and early twenties.

According to the evidence presented at trial, Shaughnessy arrived at Simard's place to see his friend, Joe Silvia, about 1:30 P.M. Nearly a dozen other persons, most unknown to him, were

present on the first floor watching video films and playing pool. Among them was the defendant, who had arrived approximately one-half hour earlier. Shaughnessy went inside Silvia's room which was just off the dining area. They closed the door and began listening to music. Simard came to the door and directed a tirade at Silvia: a video cassette cover was missing, and Simard wanted it right away. That prompted Shaughnessy to put in his two bits, asking Silvia, "Is he talking to you?" There was a difference in testimony as to what happened next. Shaughnessy and Silvia said that Simard grabbed Shaughnessy who, in turn, shoved Simard against a wall and "head-butted" him, causing him to go limp. Other witnesses testified that Shaughnessy burst through the door and attacked Simard first.

The defendant grabbed Shaughnessy from behind and pulled him off Simard. There was conflicting testimony regarding whether others joined in hitting Shaughnessy before he flashed a utility knife. Shaughnessy testified that he had been "jumped" before, that he wasn't the kind of person who shunned a fight, and that he pulled the knife "[s]o [he] didn't get stomped." It had the desired effect. Everyone backed off save the defendant, who continued to struggle with him, receiving a cut on his pinkie finger in the process. Shaughnessy wound up on top of the defendant, who pleaded for mercy. At that point, Shaughnessy held the knife aloft and closed it, signaling a truce. It was short-lived. Shaughnessy and Simard got into another heated exchange. According to one witness, Simard told Shaughnessy that he was no longer welcome and ordered him to leave, but Shaughnessy refused. Shaughnessy and Silvia testified that Shaughnessy did intend to leave and was on his way out when he was shot from behind by the defendant.[1] Silvia and Shaughnessy testified that the defendant walked over to Shaughnessy

[1]The origin of the gun was also contested. There was evidence that the gun may have been in the house as much as one month before the shooting, in the defendant's, and later Simard's, possession. Herb Carvahlo, who also lived there, testified that, during the fracas, he got the gun from "someone's hand." He gave it to Jessica Roy and said, "[G]et this out of here." She had run upstairs to her room to conceal it in her dresser when the defendant came upstairs and asked her for the gun, "before somebody else gets hurt." The defendant, who did not testify, gave a statement to State police Officer Leonard Coppenrath, whose testimony included the defendant's denial that the gun belonged to him. He claimed it was Shaughnessy's and had fallen out of Shaughnessy's pocket during their struggle, before Carvahlo brought it upstairs.

and said, "That's what you get for fucking with me." Both were impeached, however, for having failed to mention this in prior statements to police. While the defendant admitted that he went to Jessica Roy's room (see note 1, *supra*) during the fight to retrieve the gun, he claims he came down the stairs to find Simard and Shaughnessy fighting. He said he saw Shaughnessy reaching for something in his pocket and so fired a shot at Shaughnessy, aiming for his leg. He told State police Officer Leonard Coppenrath that he did not intend to kill him, but only to stop him from hurting Simard.

On appeal, the defendant claims that (1) the prosecutor made improper remarks in his closing argument and that (2) the judge gave misleading jury instructions on the elements of assault with intent to kill and (3) failed to instruct the jury on the elements of the "castle" doctrine in the context of defense of another. Only the first point was preserved at trial by an appropriate objection. We reverse the convictions.

As the decisional law requires, before the closing statements began, the prosecutor sought permission from the judge to comment on the defendant's failure to call Simard. See *Commonwealth* v. *Evans*, 42 Mass. App. Ct. 618, 623 (1997). After a lengthy discussion with the prosecutor and trial counsel, the judge declined, relying on *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. 130, 134-135 (1986) ("Because the inference, when it is made, can have a seriously adverse effect on the noncalling party — suggesting, as it does, that the party has wilfully attempted to withhold or conceal significant evidence — it should be invited only in clear cases, and with caution").[2] The judge stated quite clearly, "I'm going to tell the jury that they should not speculate about why witnesses were not called, what they would have said if they had been called, and I'm going to caution the jury not to draw any inferences against a party for not calling a witness."

Despite this, the prosecutor suggested to the jury that Sim-

[2] Other factors that must be considered before comment is permitted include the strength of the case against the defendant, whether, if innocent, he would be expected to call the witness, whether the witness is available, and the importance of the witness's testimony to the defense. See *Commonwealth* v. *Olszewski*, 416 Mass. 707, 724 (1993), cert. denied, 513 U.S. 835 (1994). The fact that a witness is equally available to both sides cuts against permitting the inference. See *Commonwealth* v. *Figueroa*, 413 Mass. 193, 199 (1992). See also, for a discussion of factors concerning the propriety of giving a missing witness instruction, *Commonwealth* v. *Spencer, post* 383 (2000).

ard's failure to testify was strong evidence against the defendant. He said, "[Y]ou heard evidence that [Simard] was here. How come Joe Simard didn't come in here and tell you all about what Joe Simard was feeling? How come Joe Simard didn't tell you, 'I was in fear for my life.' I suggest to you he didn't because he wasn't. Joe Simard's another one, see no evil, hear no evil, he didn't see anything. He didn't realize that his buddy was in there telling the police, 'Oh, I was defending him at the time.' You don't hear word one from Joe Simard. Ask yourselves why. I'd suggest to you he's got nothing to say that's going to help this defendant. That's why you don't hear from him." The argument was improper. It suggested that the jurors could consider evidence that Simard, a key figure in the case, would not support the defendant's position that the original fight between Shaughnessy and Simard showed signs of reigniting which prompted him to come to Simard's defense.[3]

More subtle, but also improper for similar reasons, was the way the judge handled trial counsel's timely objection to this portion of the prosecutor's argument. During the prosecutor's argument, the judge inexplicably overruled trial counsel's objection and permitted the prosecutor to put the finishing touches on the point. Given what the jury had heard, the judge's overruling of the objection, and the prosecutor's continuing to comment on Simard's absence, we are certain that the jury regarded the improper argument as judicially endorsed. See *Commonwealth* v. *Cobb*, 374 Mass. 514, 521 (1978); *Commonwealth* v. *Young*, 399 Mass. 527, 531 (1987); *Commonwealth* v. *Sherick*, 401 Mass. 302, 305 (1987).

The moment the jury left the courtroom, the judge stated, "I didn't realize that you were going to make such a big point about Simard's absence after I told you beforehand that I was going to tell the jury that they're not to speculate about why witnesses were not called or what they were going to say or draw any inferences against a party for not calling a witness. You invited them precisely to do that with respect to Simard."

The prosecutor responded, "Well, there's a different standard, Judge, between your Honor instructing them as a matter of law that they can draw the inference and me having a good faith

---

[3]Under the concept of defense of another, Simard's right would have become the defendant's if he reasonably believed that Shaughnessy was about to pull his knife and use it against Simard. See *Commonwealth* v. *Martin*, 369 Mass. 640, 649 (1976).

basis to argue it. There's no way I can be precluded from arguing that." Of course, he *was* precluded from arguing that. Having been told the argument was impermissible beforehand, the prosecutor cannot cloak himself in "good faith."

Contending that the judge's curative remarks on the point, which were included in his final instructions to the jury,[4] mitigated the prosecutor's mistake, the government relies on the notion that "[j]urors are expected to heed admonitions by the court to disregard matters withdrawn from their consideration." *Commonwealth* v. *Lappas*, 39 Mass. App. Ct. 285, 289 (1995). We agree with the defendant that the judge's tardy and tepid remarks to the jury did not do enough to erase the impression created in their minds — that Simard's testimony would not have helped the defendant and that they should make something out of that. To be effective, the corrective instruction should have been given as soon as the judge heard the prosecutor's obdurate response to the judge's sidebar conference, immediately after the arguments were over. See generally *Commonwealth* v. *Hoppin*, 387 Mass. 25, 31 (1982) (delay in giving corrective instructions vitiated corrective effect). Instead, his corrective efforts were delayed and encompassed in a lengthy and complicated charge on other unrelated aspects of the case. Our reading of this critical portion of the charge indicates that it was "standard, not curative." *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745, 754 (1986). *Commonwealth* v. *McLeod*, 30 Mass. App. Ct. 536, 540 (1991). This reading is bolstered by the judge's having stated his intention to give precisely the same instruction before there was any misconduct by the prosecutor to correct.

It is a reasonable inference that the defendant's anger, whether rational or not, was related not only to Shaughnessy's challenge to him but also to his asserted belief that Shaughnessy was about to pull a knife on Simard. Thus, the prosecutor's references to the inferences to be drawn from the defendant's failure

---

[4] Thirteen pages into his final charge, the judge gave the following instruction: "Now, I would urge you not to speculate about why certain witnesses were not called. Do not speculate what a witness might have said if that person were called to testify. In particular, don't speculate about why Mr. Simard was not called to testify, and don't speculate about what he might have said if he had come into court to testify. And, finally, do not draw any negative inferences against a party for failing to call a witness. You should and must confine yourself to the evidence that you did hear, and the reasonable inferences that you can draw from that evidence."

to produce Simard as a witness did "possibly make a difference in the jury's conclusions." *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 (1987). Because of the primal nature of the defendant's behavior, apparent from our reading of the transcript of the case, the prosecutor's improper remarks about Simard's failure to testify could have influenced the jury to view the defendant as intending to do away with Shaughnessy rather than to rescue Simard. The prosecutor spent a considerable portion of his argument hammering home this point in spite of the judge's pre-argument direction to stay away from the subject. This is not a case in which the prosecutor did not avail himself of the simple precaution of obtaining an advance ruling and taking the risk that he would be interrupted by the judge's admonishment. Compare *Commonwealth* v. *Fredette*, 396 Mass. 455, 466 (1985) (prosecutor gave no advance notice he would pursue such questioning; after judge admonished prosecutor, no further questions asked and no argument made to jury on issue). Rather, it was a calculated decision to try an approach that had been judicially prohibited.

Having determined that this prosecutorial misconduct might have affected the jury's decision, we need not address the remaining claims raised on appeal.

*Judgments reversed.*

*Verdicts set aside.*