## COMMONWEALTH *vs.* RONALD McCOY.

No. 02-P-574.

Suffolk. May 12, 2003. - September 15, 2003.

Present: PORADA, LAURENCE, & KANTROWITZ, JJ.

*Controlled Substances. Search and Seizure,* Automobile, Motor vehicle, Probable cause. *Practice, Criminal,* Cross-examination by prosecutor, Impeachment by prior conviction, Argument by prosecutor.

A Superior Court judge properly denied a criminal defendant's motion to suppress heroin discovered under the driver's seat of an automobile he was operating, where the scenario observed by police officers, filtered through the lens of their experience, provided them with reasonable suspicion to make a proper investigative stop of the defendant and his automobile, and where events subsequent to the lawful stop — the defendant's furtive gesture and his inability to produce a license or registration — elevated one officer's reasonable suspicion to probable cause to arrest and search the defendant and the area he had been occupying. [285-288] KANTROWITZ, J., concurring.

At the trial of indictments alleging possession of heroin with intent to distribute and doing so within 1,000 feet of a school, the judge abused his discretion in overruling the defendant's objections and in failing to give a curative instruction following the prosecutor's improper cross-examination of the defendant, which impugned the defendant's character, not otherwise at issue in the case, by insinuating his knowing intimacy with a drug criminal; this court could not say with fair assurance that the error did not influence the jury or had but very slight effect, where the error struck at the heart of the defense of the defendant's innocent explanation for being involved in the situation, where the case against the defendant was not overwhelming, and where the judge's overruling of defense counsel's objections may have been seen by the jury as judicial endorsement of the improper questioning. [288-291] KANTROWITZ, J., dissenting.

The prosecutor's improper closing argument during the trial of indictments alleging possession of heroin with intent to distribute and doing so within 1,000 feet of a school, disparaging the defendant's character when it was not an issue at trial, required reversal of the defendant's conviction, where the error went to the heart of the defense, where the judge did not address the error at defense counsel's explicit request and later provided an instruction that was minimally standard and entirely noncurative, and where error possibly made a difference in the jury's conclusions. [291-294] KANTROWITZ, J., dissenting.

At a criminal trial, the prosecutor's improper, if implicit, vouching for two

police witnesses, when considered in conjunction with other prosecutorial improprieties and judicial missteps, created a substantial risk of a miscarriage of justice requiring reversal. [294-297] KANTROWITZ, J., dissenting.

INDICTMENT found and returned in the Superior Court Department on December 21, 1998.

A pretrial motion to suppress evidence was heard by *Vieri Volterra,* J., and the case was tried before *Charles T. Spurlock,* J.

*Susan E. Taylor* for the defendant.

*Jane A. Sullivan,* Assistant District Attorney, for the Commonwealth.

LAURENCE, J. Indicted on charges of possession of heroin with intent to distribute (G. L. c. 94C, § 32[b]) and doing so within 1,000 feet of a school (G. L. c. 94C, § 32J), the defendant was found guilty by a jury of the lesser offense of possession of heroin. He now contends that (1) his pretrial motion to suppress the heroin discovered under the driver's seat of an automobile he was operating should have been allowed because the police lacked probable cause at the time they seized him; (2) he was denied a fair trial because the prosecutor improperly cross-examined him about the alleged criminal record of the passenger in the car he was driving and because the judge refused to provide a curative instruction regarding that examination; and (3) he was denied a fair trial because of several statements made by the prosecutor in closing argument, particularly the prosecutor's vouching for the credibility of the police witnesses and presenting as facts prejudicial information not in evidence. We reverse because of the prosecutorial errors.

1. *Motion to suppress.* At the evidentiary hearing on the motion to suppress, the motion judge found (based on the arresting officer's testimony, the entirety of which the judge found credible) that on the evening of November 16, 1998, police officers in an unmarked vehicle were patrolling the Maple Street area of Boston, a high crime area which the arresting officer testified was "probably one of the top three drug spots in . . . Boston," where he had made approximately one hundred arrests for drug and firearms violations, including shootings. Around midnight,

the officers saw a station wagon pull up and park in front of 32 Maple Street, where it was approached on the passenger side by three people. One was a woman the officers recognized as "a drug abuser." They observed that woman pass something (described by the officer as an unknown amount of "U.S. currency") through the rolled-down front-seat passenger's window to the passenger (who was later identified as Wanda Drayton).

Two of the officers left their vehicle[1] and approached the station wagon. The arresting officer then saw the driver, subsequently identified as the defendant, make a downward motion to the floor. Fearing that it was a firearm, the officer removed his revolver from its holster (keeping it at the side of his body) and ordered the defendant out of the car. Reaching under the driver's seat to discover what had apparently been secreted there, the officer pulled out fifty glassine bags of heroin wrapped in a napkin secured by a rubber band.[2]

On the basis of this evidence, the judge denied the motion to suppress, ruling that the officer's testimony established "probable cause to believe that a drug transaction had recently taken place at this automobile and thus justified the removal of the passengers from the automobile and a search of the automobile since individuals involved in the narcotics trade are frequently armed. . . . [F]or the officer[']s own safety he was justified in searching the automobile within a[n] arms-length of where [the defendant] had been seated."

The defendant asserts that he was effectively seized when the police "blocked" him in (see note 1, *supra*) so that he was not free to leave prior to their observing his placing something under his seat, at a time when they lacked reasonable suspicion of a crime, much less probable cause for the warrantless seizure

---

[1]The driver of the police cruiser acknowledged that he had pulled alongside the defendant's vehicle in such a way as effectively to prevent it from moving.

[2]The officer testified that he identified himself as he approached the defendant and first asked for the defendant's license and registration. When the defendant responded that he had neither, the officer asked him what he had put under the seat. The defendant did not respond to that question, at which point he was removed from the vehicle. The officer testified that he could then have arrested the defendant for operating the vehicle without a license or registration. See G. L. c. 90, §§ 10, 11, 21; *Commonwealth* v. *Lantigua*, 38 Mass. App. Ct. 526, 528 (1995).

of the heroin. Under the relevant authorities, however, the circumstances found by the judge adequately provided the officers with probable cause to conclude that a drug transaction had occurred and to arrest him prior to their blocking his car. See *Commonwealth* v. *Anderson*, 362 Mass. 74, 76-77 (1972); *Commonwealth* v. *Hall*, 366 Mass. 790, 792-793, 798 (1975); *Commonwealth* v. *Carrasco*, 405 Mass. 316, 322 (1989); *Commonwealth* v. *Santaliz*, 413 Mass. 238, 240-242 (1992); *Commonwealth* v. *Kennedy*, 426 Mass. 703, 708-711 (1998); *Commonwealth* v. *Sweezey*, 50 Mass. App. Ct. 48, 49-51 (2000); *Commonwealth* v. *Albert*, 51 Mass. App. Ct. 377, 377-380 (2001). The protective search under the driver's seat was, accordingly, proper as a search incident to the defendant's arrest for illegal drug activity. See *Commonwealth* v. *Toole*, 389 Mass. 159, 162 (1983); *Commonwealth* v. *Sanchez*, 403 Mass. 640, 646 & n.4 (1988); *Commonwealth* v. *Lantigua*, 38 Mass. App. Ct. 526, 527-528 (1995); *Commonwealth* v. *Sweezey*, 50 Mass. App. Ct. at 52-53, and cases cited. The fact that the defendant was not formally arrested until after the search is not material so long as probable cause existed to arrest at the time the police made the search for weapons or contraband. *Commonwealth* v. *Brillante*, 399 Mass. 152, 155 (1987).[3]

We agree with the Commonwealth that, in any event, "[t]he scenario observed by the officers, filtered through the lens of their experience," provided them with reasonable suspicion to make a proper investigative stop of the defendant and his automobile. *Commonwealth* v. *Sweezey*, 50 Mass. App. Ct. at 51. Based on the facts found by the judge and the uncontested testimony of the arresting officer, the police had ample reason to suspect that a drug transaction had taken or was about to take place and to conduct, at the very least, a threshold inquiry and,

---

[3]The defendant raises no challenge to the scope of the search. We conclude that it was properly confined to the area within the defendant's reach or control and was sufficiently tied to and justified by the circumstances that legitimized it. See *Chimel* v. *California*, 395 U.S. 752, 763 (1969); *New York* v. *Belton*, 453 U.S. 454, 459 (1981); *Commonwealth* v. *Clermy*, 421 Mass. 325, 328-331 (1995); *Commonwealth* v. *Brown*, 32 Mass. App. Ct. 649, 650-651, 653 (1992).

therefore, a protective search for their own safety.[4] See *Commonwealth* v. *Moses*, 408 Mass. 136, 140-144 (1990); *Commonwealth* v. *Stampley*, 437 Mass. 323, 327-329 (2002); *Commonwealth* v. *Heughan*, 40 Mass. App. Ct. 102, 104-105 (1996); *Commonwealth* v. *Mantinez*, 44 Mass. App. Ct. 513, 515-517 (1998); *Commonwealth* v. *Riche*, 50 Mass. App. Ct. 830, 833-835 (2001); *Commonwealth* v. *Albert*, 51 Mass. App. Ct. at 380 n.8. The temporary blocking of his car, construed by the defendant as effecting an illegal arrest, did not invalidate the proper threshold inquiry. See *Commonwealth* v. *Moses*, 408 Mass. at 142-143; *Commonwealth* v. *Thompson*, 427 Mass. 729, 733-734, cert. denied, 525 U.S. 1008 (1998); *Commonwealth* v. *Fitzgibbons*, 23 Mass. App. 301, 306-309 (1986); *Commonwealth* v. *Hall*, 50 Mass. App. Ct. 208, 210-211 (2000); *Commonwealth* v. *Ruiz*, 51 Mass. App. Ct. 346, 350 (2001).

The events subsequent to the lawful stop — the defendant's furtive gesture and his inability to produce a license or registration — easily elevated the officer's reasonable suspicion to probable cause to arrest and search the defendant and the area he had been occupying. See *Commonwealth* v. *Alvarado*, 420 Mass. 542, 550 (1995); *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 106 (1997); *Commonwealth* v. *Mantinez*, 44 Mass. App. Ct. at 517; *Commonwealth* v. *Sweezey*, 50 Mass. App. Ct. at 51-52; *Commonwealth* v. *Albert*, 51 Mass. App. Ct. at 380 n.8. Under either analysis, therefore, the heroin found under the defendant's seat was lawfully seized and properly admitted in evidence at trial.

2. *Improper cross-examination.* The defendant, a self-employed mechanic, testified that the car he was driving when arrested belonged to a friend (who was then incarcerated on account of a "drug case" involving, in an undescribed way, heroin). He was test-driving the car for the friend's wife after repairing it for her when he saw an acquaintance, Wanda Drayton, walking on Seaver Street and offered to give her a ride to her home at 32 Maple Street. (The friend's wife also testified,

[4]See *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102 (1997) ("An appellate court is free to affirm a ruling on grounds different from those relied on by the motion judge if the correct or preferred basis for affirmance is supported by the record and the findings").

confirming the fact of the defendant's repair and testing of the car.)

During cross-examination of the defendant, the prosecutor asked him whether he knew that Drayton "[has] been convicted of trafficking in [a] Class A substance, heroin?" Defense counsel promptly objected but was overruled by the judge. The prosecutor then asked the defendant, "Or convicted of distributing Class A, heroin. Did you know that?" The defendant responded by denying such knowledge. After completion of the defendant's testimony, defense counsel renewed his objections to such inquiry and requested a "curative instruction" for the jury to the effect that the defendant cannot be impeached by someone else's convictions. Counsel also requested that the prosecutor be instructed not to argue the point. The judge denied the requests, eliciting another defense "objection."[5]

What the prosecutor did was clearly improper, and the judge's refusal to condemn the prosecutor's impropriety was an abuse of his discretion. "Such evidence tainted the defendant with guilt by association and was not relevant to prove the defendant [possessed or] distributed heroin." *Commonwealth* v. *Best*, 50 Mass. App. Ct. 722, 725 (2001) (questions about codefendant's prior arrest for possession of heroin was improper). See *Commonwealth* v. *Kennedy*, 426 Mass. at 709 n.5. The prosecutor should not have been allowed to impugn the defendant's character by insinuating his knowing intimacy with a drug criminal, particularly when that alleged criminality was never established. See *Commonwealth* v. *Kozec*, 399 Mass. 514, 525 (1987), quoting from *Commonwealth* v. *Kozec*, 21 Mass. App. Ct. 355, 364 (1985) (prosecutor's eliciting testimony that defendant, charged with assault and battery, was "jello wrestler" who publicly wrestled other women, had no probative value and

---

[5]Wanda Drayton, the passenger in the car on November 16, 1998, was not arrested after the incident in question, was permitted to keep the "currency" handed her by the known drug user, was never indicted on account of the incident, and was not called as a witness by either the Commonwealth or the defense. Whatever criminal record she may have had, including the purported convictions, was never introduced in evidence during the defendant's trial. We reject the Commonwealth's assertion that the defendant did not properly preserve the issue raised by the prosecutor's questions relating to Drayton's "convictions."

illicitly "furthered the prosecutor's apparent goal of depicting [the defendant] in the minds of the jury as . . . promiscuous . . . [serving] as evidence of the defendant's bad character"). A prosecutor should not be allowed to conduct a "cross-examination 'in bad faith or without foundation.' " *Commonwealth* v. *Christian*, 430 Mass. 552, 561 (2000), quoting from *Commonwealth* v. *White*, 367 Mass. 280, 285 (1975). "It is error for a prosecutor 'to communicate impressions by innuendo through questions which are answered in the negative . . . when the questioner has [or produces] no evidence to support the innuendo.' " *Commonwealth* v. *Fordham*, 417 Mass. 10, 20 (1994), quoting from *Commonwealth* v. *White*, 367 Mass. at 284.

Because of the irrelevance of the prosecutor's questions — the defendant's character was never in issue — and their lack of basis in the evidence, the judge erred in overruling the defendant's objections, see *Commonwealth* v. *Howell*, 49 Mass. App. Ct. 42, 49 (2000), and in refusing to cure the situation except by "tardy and tepid remarks" in his final instructions to the jury (which consisted entirely of the statement that "[q]uestions to the witnesses are not evidence") that were "standard, not curative." *Commonwealth* v. *Rodriquez*, 49 Mass. App. Ct. 370, 374 (2000) (quotation omitted). Since the defendant seasonably objected, under the applicable "prejudicial error" standard we must determine whether we can say with fair assurance that the error "did not influence the jury, or had but very slight effect." *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting from *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983).

We have no such assurance here, where the error struck at the heart of the defense (the credibility of the defendant's "innocent" explanation for being involved in the situation); where the case against him was not overwhelming (the defendant himself being unknown to the police and never having been observed dealing or handling drugs or money)[6]; and where the judge's inexplicable overruling of defense counsel's objection

---

[6]Presence in the vehicle where the drugs were discovered is insufficient to prove the defendant's knowledge and intent to control the contraband. *Commonwealth* v. *Garcia*, 409 Mass. 675, 686-687 (1991). Mere presence does not

may have been seen by the jury as judicial endorsement of the improper questioning and innuendo, see *Commonwealth* v. *Rodriquez*, 49 Mass. App. Ct. at 373, enhancing the "active danger that [the] jury could misuse the evidence." *Commonwealth* v. *Harris*, 409 Mass. 461, 469 (1991).

3. *Factual misstatements in closing.* Even if the cross-examination smearing of the defendant with the purported drug misdeeds of another did not itself create undue prejudice, we are persuaded that the prosecutor's closing argument exacerbated the harm to a reversibly toxic level. Apparently emboldened by his success during cross-examination, the prosecutor in closing argument derided the defendant's testimony with a renewed effort to brand him as a knowing confederate of drug criminals:

> "Think of the circumstances that he tells you about. He just so happens to go over to a drug dealer's house to fix the drug dealer's car. And then he drives around and picks up a woman. And lo and behold, who is that woman? And

---

amount to possession even if one knows that drugs are there. *Commonwealth* v. *Booker*, 31 Mass. App. Ct. 435, 437 (1991). "Nor is possession proved simply through the defendant's association with a person who controlled the contraband." *Ibid.* While presence may "tip the scale in favor of sufficiency" when "supplemented by other incriminating evidence," *Commonwealth* v. *Brown*, 401 Mass. 745, 747 (1988), quoting from *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977), evidence that the driver and passenger bent forward after realizing the presence of police officers "does not support an inference that [either] the defendant [or his passenger had] placed [contraband, in that case a firearm] under the passenger seat." *Id.* at 748.

That the jury did not find the defendant guilty of the more serious charge of possession with intent to distribute in a school zone — a fact the dissent regards as indicative of lack of prejudice to the defendant — is (to the extent it is not an entirely speculative consideration) largely irrelevant in the evaluation of prejudice from objected-to improper questioning and closing argument under the "prejudicial error" standard. However pertinent that factor might be for purposes of the "substantial risk of miscarriage of justice" (or ineffective assistance of counsel) analysis, it has little significance here, not only because the applicable review standard is a possibility, rather than a significant and material risk, of having made a difference to the jury; but also because the burden of disproving such a possibility is upon the Commonwealth, which has failed to do so. See and compare *Commonwealth* v. *Schulze*, 389 Mass. 735, 741-742 (1983); *Commonwealth* v. *Pearce*, 427 Mass. 642, 644-645 (1998); *Commonwealth* v. *Alphas*, 430 Mass. 8, 13-14 & n.7, 21-23 (1999). Indeed, the fact that the jury here could not render a verdict of guilty on the graver charges can be seen as another indicium that the Commonwealth's case was far from overwhelming.

what does she do for a living? Is she involved in the drug trade? And lo and behold they stop at 32 Maple Street, and who approaches the car? Someone the officers know to be involved in heroin.

"So this poor guy, three times in one night, is surrounded by heroin users and drug dealers. And he wants you to believe it's all circumstance. 11:40 P.M. on a work night and all of sudden all his friends are either heroin users or heroin dealers."

Following the prosecutor's argument, defense counsel at side-bar reminded the judge that he had earlier requested that the prosecutor be instructed not to argue that Wanda Drayton was a drug dealer or had been convicted of drug dealing because there was no evidence supporting such statements; and asked that an instruction be given the jury not to consider such argument. The judge responded, "Overruled."

The prosecutor's quoted statements were devoid of evidentiary basis in every material respect. There was neither evidence nor permissible inferences from the testimony that the owner of the car which the defendant drove was a drug dealer or a heroin dealer (his incarceration following a "drug case" may have been the result of heroin possession for personal use or for merely being knowingly present at a place where heroin was kept or in the company of a person possessing heroin, see G. L. c. 94C, §§ 34, 35); or that Wanda Drayton was either a drug user or was involved in any way in heroin or the drug trade, much less that she did so for a living; or that the "drug user" who approached the car was known to be involved with heroin or was a heroin user or was a friend of the defendant. See the authorities cited in note 6, *supra*. The manifest intention of the prosecutor was to convey to the jury the impression that the defendant was criminally implicated in heroin transactions just like and along with "all his friends." The remarks were not merely irrelevant to the issue of the defendant's guilt but constituted prejudicial character denigration (as discussed in the preceding section), made all the more improper because there was no evidence that the defendant himself had a criminal record involving drugs or had ever sold, used, or even touched any

drugs. See *Commonwealth* v. *Worcester*, 44 Mass. App. Ct. 258, 264-265 (1998).

The defendant's character was never an issue properly before the jury. The jury's sole task was to determine whether the Commonwealth's evidence established beyond a reasonable doubt that the defendant had possessed heroin with intent to distribute on the evening of November 16, 1998, not whether he was intimately involved with heroin dealers. A closing argument that disparages a defendant's character when it is not an issue at trial is both improper and inflammatory. See *Commonwealth* v. *Griffith*, 45 Mass. App. Ct. 784, 784-785 (1998) (prosecutor's argument calling defendant charged with single count of distributing marijuana "drug dealer" was inflammatory and "stepped over the boundaries of permissible advocacy").

We reiterate the admonitions that our appellate courts have, unfortunately all too frequently, been compelled to direct to the Commonwealth's representatives: Prosecutors must hold themselves "to a consistently high and proper standard," indeed "to a stricter standard of conduct than are errant defense counsel and their clients" held, because of the "serious consequences [to the public] from improper closing argument," *Commonwealth* v. *Kozec*, 399 Mass. at 519, not the least of which is a needless waste of public resources when retrials become necessary. While a prosecutor may strike hard blows, he is not at liberty to strike foul ones. *Commonwealth* v. *Long*, 17 Mass. App. Ct. 707, 711 (1984), citing *Commonwealth* v. *Felton*, 16 Mass. App. Ct. 63, 66 (1983). See *Berger* v. *United States*, 295 U.S. 78, 88 (1935). In the final analysis, "the duties of a prosecutor to administer justice fairly . . . go beyond winning convictions." *Commonwealth* v. *Tucceri*, 412 Mass. 401, 408 (1992).

In determining whether improper argument requires reversal in any particular case, we consider whether the defendant seasonably objected, whether the error went "to the heart of the case," whether the judge's instructions mitigated the error, and whether the error "possibly ma[d]e a difference in the jury's conclusions." *Commonwealth* v. *Kozec*, 399 Mass. at 518. The prosecutor's closing portrayal of the defendant as a member of the heroin-dealing culture fails all of these tests.

The defendant strenuously objected. The remarks were not addressed to a collateral matter but struck directly at the heart of the defense, namely, the credibility of his explanation for his activities on the evening in question — which would have been undermined by the prosecutor's manifest implication that the defendant had a propensity to commit the very kind of crime charged in this case. The judge refused to address the error at defense counsel's explicit request. He then provided an instruction that was minimally standard and entirely noncurative (being confined to eight words, "Arguments or statements by lawyers are not evidence"). By his rulings, the judge effectively managed "to give judicial endorsement to the prosecutor's improper argument," *id.* at 522, and "allowed the judicial imprimatur to attach to the inferences of guilt." *Commonwealth v. Cobb*, 374 Mass. 514, 521 (1978). Finally, as noted earlier, the Commonwealth's case was far from overwhelming (see note 6, *supra*). Against this backdrop (including the harmful effect of the improper cross-examination), we cannot conclude with assurance that the improper closing remarks of the prosecutor did not tip the balance and possibly make a difference in the jury's verdict.

4. *Improper "vouching."* Our conclusions as to the unfairly prejudicial impact of the prosecutor's conduct are further buttressed — though they require no such support — by the prosecutor's inappropriate closing remarks regarding his two police witnesses.

Defense counsel's closing argument had emphasized that the defense witnesses (especially the defendant, by virtue of his taking the stand to assert his innocence) were credible; that the police witnesses conceded they never saw the defendant touch any drugs or receive any money; that the prosecution had failed to produce any of the drug money the police had testified to seeing; that the police witnesses had exaggerated what they saw the defendant doing as they approached the car (from "lean-[ing] down slightly" at the suppression hearing to "shoulder dipping" at trial); and that the officers' memories were not trustworthy (they had forgotten whether they had ever determined who owned the car).

Counsel concluded his closing with the exhortation that:

Commonwealth *v.* McCoy.

"They're making a mountain out of a molehill because they have nothing to connect [the defendant] with the drugs. They're asking you to make a leap from leaning down, shoulder dip, to yes, he did possess the drugs and he was distributing drugs. . . . The truth remains [the defendant] did not own that car . . . never touched the drugs . . . [and] is innocent because he did not know drugs were kept in that car."

This argument by defense counsel did not insinuate, much less aver, that the police witnesses were liars. Contrast *Commonwealth* v. *Simmons*, 20 Mass. App. Ct. 366, 368-369 (1985); *Commonwealth* v. *Murchison*, 35 Mass. App. Ct. 269, 274-275 (1993), *S.C.*, 418 Mass. 58 (1994). It rather properly focused on comparative credibility, communicating to the jury that they should believe the defendant's plausible version of his involvement, not the factually unsupported "leap" that the police were asking them to make.

In response, the prosecutor immediately declared:

"Ladies and gentlemen of the jury, what you just heard from [defense counsel] as he politely — what he was doing — and I grant you he was doing it very politely — he was just calling somebody a liar. . . . He's saying those two police officers, with a combined twenty-six years of experience in the various neighborhoods protecting the streets of the City of Boston, came in here, walked up to that stand, took the oath, and lied. That's what he's saying. They came in here and lied."

After several rhetorical questions in the same vein ("They came in here and lied to you? Made the whole story up? . . . Did they make that up [that the defendant bent over], too? Both of them?"), the prosecutor concluded this line of argument with a final foul flourish: "Again, [if] you believe them [referring to the defendant and his counsel], you're calling those two police officers liars. That's the fact of the matter."

These remarks were multiply objectionable. They not only constituted improper, if implicit, vouching[7] but also exceeded

_____

[7] We agree with the dissent that the prosecutor's remarks did not precisely fall within the most commonly disapproved types of vouching, i.e., directly expressing his personal belief in his witness's credibility or indicating his possession of extra-evidentiary knowledge (see *Commonwealth* v. *Wilson*, 427 Mass. 336, 352 [1998]). We also are aware that the line between arguing for

the bounds of fair, corrective response, see *Commonwealth* v. *Simmons*, 20 Mass. App. Ct. at 370-371; impermissibly appealed to the jury's emotional concern for crime-free streets by inferentially urging their trust in the police witnesses who had long protected those streets, see *Commonwealth* v. *Vuthy Seng*, 436 Mass. 537, 556, cert. denied, 537 U.S. 942 (2002); *Commonwealth* v. *Ward*, 28 Mass. App. Ct. 292, 294-295 (1990); *Commonwealth* v. *Wallace*, 45 Mass. App. Ct. 930, 931 (1998); and reflected the kind of "unnecessary and hyperbolic embellishments" our appellate courts view with disfavor. *Commonwealth* v. *Masello*, 428 Mass. 446, 453 (1998). See *Commonwealth* v. *Ciampa*, 406 Mass. 257, 265 (1989); *Commonwealth* v. *Griffith*, 45 Mass. App. Ct. at 788-789; *United States* v. *Richter*, 826 F.2d 206, 209 (2d Cir. 1987); *United States* v. *Rosales*, 19 F.3d 763, 767 (1st Cir. 1994). Cf. *Commonwealth* v. *Thomas*, 401 Mass. 109, 113, 116 (1987); *Commonwealth* v. *Kelly*, 417 Mass. 266, 269-271 (1994); *Commonwealth* v. *Lopez*, 31 Mass. App. Ct. 547, 552-553 (1991); *United States* v. *Torres-Galindo*, 206 F.3d 136, 142 (1st Cir. 2000).

What the prosecutor should have done in proper response was "to argue from the evidence why the [police] witness[es] should be believed." *Commonwealth* v. *Hardy*, 431 Mass. 387, 396 (2000). Instead, he improperly suggested to the jury that it was impermissible for defense counsel to question the credibility of police officers. See *Commonwealth* v. *Grandison*, 433 Mass. 135, 143 (2001). His argument was plainly intended to

and vouching for a witness's credibility is all too often a fine one. See *Commonwealth* v. *Ciampa*, 406 Mass. 257, 265 (1989). Nonetheless, "[w]hile not vouching in the most familiar sense, [the prosecutor's argument] does invite the jury to rely on the prestige of the government and its agents rather than the jury's own evaluation of the evidence; to this extent, the argument presents the same danger as outright vouching." *United States* v. *Torres-Galindo*, 206 F.3d 136, 142 (1st Cir. 2000). We do not find it difficult to conclude that an average juror would construe the quoted comments and rhetorical questions as communicating (even if indirectly, obliquely, and implicitly) the prosecutor's personal endorsement of the proposition that the experienced police witnesses who had for many years kept Boston's streets safe — inferably, from the likes of the defendant and his "heroin dealer" friends who were now impugning police integrity — could be trusted to tell the truth. See *Commonwealth* v. *Ciampa*, 406 Mass. at 265; *Commonwealth* v. *Griffith*, 45 Mass. App. Ct. at 788-789; *Commonwealth* v. *Zavala*, 52 Mass. App. Ct. 770, 776 (2001). Cf. *Commonwealth* v. *Raymond*, 424 Mass. 382, 391 (1997).

Commonwealth *v.* McCoy.

bolster police credibility, which was the crux of the Commonwealth's case and was, therefore, particularly harmful to the defense. Although the defendant did not object to those remarks, when they are considered in conjunction with the previously discussed prosecutorial improprieties and judicial missteps, we have no hesitation in concluding that, at the very least, a substantial risk of miscarriage of justice resulted.[8]

> *Judgment reversed.*
> *Verdict set aside.*

KANTROWITZ, J. (concurring in part, dissenting in part). 1. *Motion to suppress.* I agree with the majority that the police possessed probable cause to arrest, having interrupted what they appropriately perceived as a drug deal in progress.

2. *Improper cross-examination.* Even assuming that the single question concerning Drayton having been convicted of heroin distribution was inappropriate,[1] it is difficult to ascertain any prejudice. Drayton was the middleman in a drug transaction. Indeed, this fact helped establish probable cause to arrest. The jury, having heard of her involvement in selling heroin, could not have been adversely affected by a single question concerning the same general subject matter. Further, the response to the question was in the negative. In his final instructions, as in his preliminary instructions, the judge properly instructed the jury that such questions are not evidence.[2] Lastly, the jury's acquittal

---

[8]We need not consider the defendant's other challenge to the prosecutor's closing, protesting that the prosecutor misstated the law regarding the jury's use of the defendant's prior convictions, which has no merit because the judge did adequately instruct as to the permissible use of such evidence and eliminated any plausible possibility of prejudice.

[1]It appears the question was asked, not to disparage the defendant's character as the majority indicates, but rather to shed light on the knowledge element of the crime. See *Commonwealth* v. *Supplee*, 45 Mass. App. Ct. 265, 268 (1998) ("We do not discount the possibility that a case might arise in which a judge, within discretion, could permit the use of someone else's conviction in cross-examination to test the accuracy of a witness's perception"). See also *Commonwealth* v. *Robinson*, 43 Mass. App. Ct. 257, 260-261 (1997).

[2]The majority characterizes the jury instruction as "tardy and tepid" and "standard, not curative." How then does a jury respond to such an instruc-

of the defendant on the two serious charges demonstrates their ability to assess properly the evidence.

3. *Factual misstatements in closing.* The defendant testified to a somewhat implausible story — a self-employed mechanic, driving around, late at night, at approximately 11:40 P.M., taking the car he is allegedly working on for a test ride, when he happens to bump into Wanda Drayton, out walking, whom he agrees to drive home. Just as he was pulling up to drop Drayton off, the police happen to stop him, search the car and surprisingly find fifty bags of heroin and money under the seat. A defense witness testified that she had hired him to fix her car,[3] which belonged to her husband who was, at the time of the incident, incarcerated for a "drug case" involving heroin.

A prosecutor can remark on the defendant's theory of the case, as long as the statements and inferences are based in evidence and do not represent the prosecutor's personal beliefs on the credibility of the defendant. See *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 272 (1982); *Commonwealth* v. *Sleeper,* 435 Mass. 581, 595 (2002). Where a defendant testifies, a prosecutor can properly refer to the defendant's lies. See *ibid.* (based in part on theory that defendant's testimony was preposterous, prosecutor's reference to defendant's lies was proper). Additionally, "[i]t is not improper for the prosecutor to suggest to the jury that the defendant attempted to 'fool' them." *Commonwealth* v. *Cohen,* 412 Mass. 375, 388 (1992). Nor is there "error in permitting the prosecutor to argue that the defense was contrived. The question of credibility of the witness was fundamental to the trial." *Commonwealth* v. *Cameron,* 385 Mass. 660, 669 (1982).

The prosecutor handled with skepticism, properly I submit, the tale spun by the testifying defendant. The prosecutor stated, in part:

> "Think of the circumstances that he tells you about. He just so happens to go over to a drug dealer's house to fix

---

tion? Are they not, as we have written countless times, presumed to follow the instructions given them? See *Commonwealth* v. *Pope,* 406 Mass. 581, 588 (1990).

[3]She testified that the car was either a white Chevrolet or a Plymouth Reliant. The police officers testified that the car was a yellow Ford Fairmont.

the drug dealer's car. And then he drives around and he picks up a woman. And lo and behold, who is that woman? And what does she do for a living? Is she involved in the drug trade? And lo and behold they stop at 32 Maple Street, and who approaches the car? Someone the officers know to be involved in heroin.

"So this poor guy, three times in one night, is surrounded by heroin users and drug dealers. And he wants you to believe it's all circumstance. 11:40 P.M. on a work night and all of a sudden all his friends are either heroin users or heroin dealers. And it's a circumstance. Do you believe it?"[4]

While the majority finds neither evidence nor permissible inferences to support the prosecutor's closing, both are clearly evident. Wanda Drayton, who was involved in the drug sale which helped create probable cause to arrest, is a drug dealer.[5] The person approaching the car, who passed money to Drayton, ostensibly to purchase the drugs, is a drug buyer.[6] The car's owner, as testified to by the defense, was at the time, serving a sentence for a "drug case" involving heroin. As fifty packets of heroin were found in the car and no other drug, it is permissible to infer that the drug dealers were heroin dealers and the drug purchaser was a heroin buyer. The prosecutor's closing on this point was permissible. To conclude that "[t]he prosecutor's quoted statements were devoid of evidentiary basis in every material respect" is simply wrong.

Moreover, the jury were instructed, both at the preliminary and final stages, that the closing arguments of counsel were not to be considered as evidence, which minimized any possible

---

[4]Other eyebrow-raising aspects of the defense involved (1) his driving with a suspended operator's license; (2) his testimony of calling his wife at approximately 8:30 P.M. to let her know that he would be home in a little while, yet taking the car for a forty-five minute test drive on the highway and being arrested at nearly midnight; and (3) the logic of one in jail for a heroin-related charge leaving $184 and fifty bags of heroin underneath the driver's seat in his car for six weeks.

[5]The middleman in a drug deal is a drug dealer. That Drayton that evening was acting in such a capacity permitted the prosecutor to refer to her as one.

[6]There was also evidence, developed during the cross-examination of one of the arresting officers, that the person who approached the car was a "drug abuser."

prejudicial effect.[7] See *Commonwealth* v. *Ortiz-Soto*, 49 Mass. App. Ct. 645, 650 (2000).

4. *Improper vouching.* The police testified that, as they approached the car from the front, the defendant made a gesture as if placing something under the seat, which when searched revealed fifty bags of heroin and $184. The defendant asserted that he did not make the gesture. The defendant, in his closing, intimated that the police were being less than candid.[8]

In response, the prosecutor, in his closing, characterized this argument as calling the police liars.[9] The defendant, although vigilant and objecting to other evidence, chose not to object

---

[7]Once again, the majority gives short shrift to the jury instruction, characterizing it as "minimally standard." See note 2, *supra.*

[8]"Officer Jones says, I saw his shoulder dip. No doubt. I saw his shoulder dip as I was approaching the car from twenty feet. Just — on February 10, 2000, a couple of months ago, I asked him, Did you see his shoulder — Did you see him lean down? And if you remember, I had him read his own statement, which he reviewed for some time, to confirm. And he read it to you. A couple of months ago, he wasn't so sure, he says — and that was at a hearing before a judge, under oath — 'I guess, I guess he would have to lean down slightly.'

"That has now progressed to, I saw his shoulder dipping.

"And just think about what the officers said about where he found the drugs; under the center of the seat.

"We've all been in cars before. I would just leave it up to you to see if it makes sense that someone who sees somebody approaching would be able to put drugs under the center of the seat in that instant.

"They're making a mountain out of a molehill because they have nothing to connect [the defendant] with the drugs. They're asking you to make a leap from leaning down, shoulder dip, to yes, he did possess the drugs and he was distributing drugs."

[9]The prosecutor argued, in part, and in part excessively: "Ladies and gentlemen of the jury, what you just heard from [defense counsel] as he politely — what he was doing — and I grant you he was doing it very politely — he was just calling somebody a liar. Because, you see, you can't have it both ways. He's not saying they were mistaken. He's saying those two police officers, with a combined twenty-six years of experience in the various neighborhoods protecting the streets of the City of Boston, came in here, walked up to that stand, took the oath, and lied. That's what he's saying. They came in here and lied."

The prosecutor later asserted, arguably coming close to, if not stepping over the line, "Again, [if] you believe them, you're calling those two police officers liars. That's the fact of the matter."

here. The majority characterizes this unobjected-to argument as prosecutorial vouching.

"Improper vouching can occur if an attorney expresses a personal belief in the credibility of a witness, or indicates that he or she has knowledge independent of the evidence before the jury." *Commonwealth* v. *Wilson*, 427 Mass. 336, 352 (1998).

Here the prosecutor did not vouch for the credibility of the police officers. There was no expression of personal belief in the credibility of the police or an indication that the prosecutor had knowledge independent of the evidence before the jury. The prosecutor simply made an accurate statement of fact: that if the jury believed the defendant, they could not also believe the police. It is axiomatic that when there are two conflicting versions of events and one side is found, by a jury, to be true, the other side has to have been found to be not true.[10] "In a case that essentially reduces to which of two conflicting stories is true, it may be reasonable to infer, and hence to argue, that one of the two sides is lying." *Commonwealth* v. *Murchison*, 418 Mass. 58, 60 (1994), quoting from *United States* v. *Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991).

5. *Conclusion.* A defendant is entitled to a fair trial, not one free from all error. While missteps were made here, including some aspects of the prosecutor's closing argument, none resulted in the defendant receiving anything other than the trial to which he was entitled. That the jury were intelligent and sophisticated, moving beyond puffery and rhetoric, is evidenced by their finding the defendant not guilty of the serious charges facing him (drug trafficking in a school zone) and finding him guilty only of so much of the first indictment as alleged simple possession. That militates, in part, against finding both prejudicial error and a substantial risk of a miscarriage of justice. As such, I respectfully dissent.

---

[10]Some cases, of course, may call into question the possibility of a good faith mistake being made, as opposed to a lie. As veteran trial counsel know, it is rare to call a witness a liar, preferring the more subtle route. A trial judge must listen closely to ensure that the arguments made are warranted by the evidence.