After a jury trial in the Superior Court, the defendant, Ilya Zinov, was convicted of armed assault with intent to murder, G. L. c. 265, § 18(b ), aggravated assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A(c )(i), carrying a firearm without a license, G. L. c. 269, § 10(a ), and possessing a firearm during the commission of a felony, G. L. c. 265, § 18B. After a jury-waived trial, he was also convicted under the armed career criminal statute, G. L. c. 269, § 10G(a ). He filed a timely notice of appeal.[2] For the reasons discussed below, we affirm.
Background. On the evening at issue, prior to the shooting that formed the basis for the charges in this case, the victim, John Lopes, was involved in a dispute in the parking lot of Ying's Restaurant in Hyannis. During an argument with his then-girl friend,[3] the victim heard a group of people laughing, and "angrily" approached them. The victim stood face to face with a member of the group, whom he had "[b]riefly" seen before and whom he identified at trial as the defendant, and said, "[w]hat are you laughing at? Like you think something's funny?" The defendant replied, "[n]o, I was just laughing how you was yelling at that bitch." The victim responded, "[t]hat's not no bitch. That's my woman." The victim's friends approached and asked what was going on. The victim said, "[n]othing. I'm handling it myself." One of the other individuals at the scene said, "[n]othing's going on," to which the defendant retorted, "[y]ou got that," and walked away. The victim described his own demeanor during the interaction, which lasted "maybe two minutes," as "hostile" and "aggressive."
Later that night, the victim's friend, Jeff Merrifield, was approached by a different group of people, in the same parking lot. An argument concerning Merrifield's apparent sale of phony Percocets ensued. The victim testified at trial that he "didn't want anything bad to happen," and tried to "mediate the problem." After some "yelling back and forth," everyone walked away.
Yet later that same night, the victim's girl friend asked the victim to change a flat tire on her motor vehicle. The victim looked in the trunk of the vehicle for a jack, which he could not locate. As he walked from the trunk to the driver's side window, he saw the defendant walking towards him. As the victim leaned into the window and spoke to his girl friend, he "started getting shot." The victim ran and, as he did so, saw five to seven flashes from the barrel of a small gun, which the defendant was shooting. The victim ran toward a nearby automobile dealership where he was ultimately approached by a taxi driver who eventually put him into the cab. The victim had the driver return to the parking lot where they picked up his girl friend. The driver then transported them to the hospital. The victim was covered in blood and suffered gunshot wounds to the back, neck, and arm.
The victim's testimony was corroborated in part by the taxi driver, his girl friend, and other witnesses, as well as by exhibits including his medical records. However, he was the only person who identified the defendant as the shooter at trial. The defense centered on the existence of dual and distinct motives for the shooting; the victim's credibility and inconsistent statements to the police; the victim's cooperation agreement with law enforcement; and the victim's failure to identify the defendant to the police until approximately eighteen months after the shooting, and while in custody after his subsequent arrest.[4]
Discussion. 1. Closing argument. The defendant contends that the prosecutor made baseless assertions in his closing argument, which warrant a new trial. Specifically, he claims that there was no evidence indicating that the defendant thought of himself as a "tough guy," or that he wanted to "save fac[e]" in the "community," and thus the prosecutor's statements to that effect constituted impermissible and prejudicial commentary relating to the defendant's alleged bad character. We disagree.
Defense counsel's closing argument repeatedly emphasized the "drug ripoff" as the motive for the shooting. For example, he argued as follows:
"The idea that this happened over a drug ripoff involving $8,000 in fake Percocets -no, that's a theory that everybody seems to buy, and then it changes. And what's the motive now? And this isn't funny because somebody's life is on the line here. But they want you to believe that somehow this incident-because [the victim] tells them that it occurred-because the man laughed at him, and then he bumped him, pumped him, did something."
Defense counsel also queried:
"I mean you are supposed to believe that this incident occurred somehow because [the victim] was laughed at? And then somebody came back and shot him? Versus there was a drug rip off?"
In response, near the outset of his closing, the prosecutor argued as follows:
"This isn't a case about Percocets... This is a case about [the defendant's] self-image as a tough guy. He was shown up in the community. And what did he do? He came back later when [the victim] was in front of him all by himself and he shot him. Why did he shoot him? Because he got shown up. That's why he shot him.".
The prosecutor later said, "[t]his is about [the defendant] saving face. This is about [the defendant] finding [the victim] with nobody around and making [the victim] pay for showing him up." And finally, at the end of his argument, the prosecutor said, "this case is about [the defendant] and his self-image as a tough guy. He was shown up in public by [the victim] in front of someone he was with, in front of a group of people earlier in the evening."
At the conclusion of the Commonwealth's closing, defense counsel objected to various remarks made by the prosecutor. Although the objection was not a model of clarity, it was sufficiently specific to preserve this issue on appeal. See Commonwealth v. Awad, 47 Mass. App. Ct. 139, 143 n.2 (1999). As the issue was preserved, we review for prejudicial error. Under this standard, we must determine whether we can say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994) (quotation omitted). We consider the prosecutor's remarks "in the context of the whole argument, the evidence admitted at trial, and the judge's instructions to the jury." Commonwealth v. Nelson, 468 Mass. 1, 10 (2014) (quotation omitted).
Placed in context, the prosecutor's statements constituted an inartful response to the argument by defense counsel, but not grounds for reversal. It would have been preferable for the prosecutor to avoid the "tough guy" label and to suggest that the evidence showed that the defendant reacted to being shown-up in front of his companions, instead of using the term "community." That notwithstanding, a reasonable juror would have understood that the prosecutor was contrasting the two potential motives for the shooting and drawing inferences based on the evidence, rather than, as the defendant contends, sharing some sort of private knowledge with them. "[E]nthusiastic rhetoric, strong advocacy, and excusable hyperbole are not grounds for reversal," Commonwealth v. Wilson, 427 Mass. 336, 350 (1998) (quotation omitted), and this case falls into that category.
Even if we assume, arguendo, that the prosecutor's remarks crossed the line into error, we are confident that the error did not influence the jury. See Commonwealth v. McCoy, 59 Mass. App. Ct. 284, 290 (2003). Indeed, the challenged statements comprised only a slight portion of the prosecutor's comprehensive closing argument, which covered seventeen pages of the trial transcript. Moreover, throughout trial, the jury were repeatedly apprised of the competing motives for the shooting; they knew of the victim's cooperation agreement, prior convictions, and purported motive to curry favor with the police; and they were presented with a full and fair picture of the events at issue. See Wilson, supra (jurors are "presumed to have a certain measure of sophistication in sorting out excessive claims on both sides").
Finally, the judge instructed the jury three times that closing arguments are not evidence, and reminded them that they "shouldn't consider anything that [the attorneys] say during the course of their closing arguments as evidence because the evidence has been declared closed by the Court." The instructions were thorough and accurate, and we presume the jury followed them. See Commonwealth v. Cortez, 438 Mass. 123, 130 (2002).
2. Grand jury evidence. The defendant also contends that the motion judge erred in denying his motion to dismiss the indictment because the prosecutor withheld exculpatory evidence from the grand jury. The defendant claims that the grand jury were not aware of the existence of the cooperation agreement between the Commonwealth and the victim. Under that agreement, the victim would cooperate "relative to incidents occurring on or about January 6, 2011, involving the firing of a firearm, injuries sustained by [the victim] and the identity of the person who fired said firearm ... and the following individual: [the defendant]," in exchange for a reduction in charges from trafficking in cocaine to possession of cocaine. According to the defendant, the omission of any evidence of the cooperation agreement was exacerbated by the introduction of a recording of a police interview with the victim, in which he stated, "[n]o promises or threats have been made, and no pressure or force of any kind has been made against me."[5]
We agree with the motion judge's conclusion that "the grand jurors heard reasonably trustworthy information that on January 6, 2011, the defendant shot [the victim] and that probable cause exists to charge the defendant." Accordingly, we think it unlikely that these failures of disclosure and representations to the grand jury "would have affected the grand jury's decision to indict." Commonwealth v. Mayfield, 398 Mass. 615, 621 (1986), quoting from Commonwealth v. McGahee, 393 Mass. 743, 747 (1985). We further note that the grand jury were apprised that the defendant's bail was reduced following his July 24, 2012, recorded statement to the police, which was played for them and entered into evidence as an exhibit. Ultimately, we agree with the judge that the record does not reflect that the Commonwealth made a deceptive presentation of evidence to the grand jury. Even assuming, arguendo, that the record did so reflect, we cannot say that such evidence was presented with the intention of obtaining an indictment. See Mayfield, supra. See also Commonwealth v. Hyde, 88 Mass. App. Ct. 761, 773-774 (2015). The judge did not err in denying the motion to dismiss.
Judgments affirmed.
Order denying motion for new trial affirmed.

We allowed the defendant's motion to stay his appeal to enable him to bring a motion for a new trial. That motion was denied by the trial court. The defendant filed a second notice of appeal and these appeals were consolidated.

At the time of trial, the victim and his "ex-girlfriend" were no longer dating.

Although the victim did not identify the defendant to the police until many months after the shooting, he testified that two weeks to a month after he left the hospital, he looked at pictures on his computer and recognized the defendant as the person with whom he had argued in the parking lot and as the shooter. The victim further testified that he did not seek out the police and reveal the defendant as the shooter because he feared further consequences and "didn't want any more harm to be done to [him] and [his] family."

The cooperation agreement was executed two days after the victim made the recorded statement.